# United States Court of Appeals

## For the First Circuit

No. 06-1420

THOMAS PAYNE-BARAHONA,

Petitioner,

v.

ALBERTO R. GONZÁLES, ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER

OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>,

Torruella and Howard, <u>Circuit Judges</u>.

<u>John H. Ruginski</u> for petitioner.
<u>Eric W. Marsteller</u>, Office of Immigration Litigation, Civil Division, Department of Justice, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>Carol Federighi</u>, Senior Litigation Counsel, on brief for respondent.

January 10, 2007

**BOUDIN**, <u>Chief Judge</u>.  Thomas Payne-Barahona is a citizen of Honduras and was a legal permanent resident of the United States.  In July 1997, Payne was convicted of felony domestic assault in Rhode Island and received a sentence of three years, which the court suspended.  In July 2003, removal proceedings were begun against Payne, 8 U.S.C. §§ 1227(a)(2)(A)(iii), (E)(i) (2000), as one convicted of an aggravated felony and a crime of domestic violence.  Payne applied for cancellation of removal and voluntary departure.  <u>Id.</u> §§ 1229b(a)(3), 1229c(b)(1)(C).

The crime in question was indisputedly an aggravated felony under 8 U.S.C. § 1101(a)(43)(F), making petitioner statutorily ineligible for cancellation of removal or voluntary departure.  8 U.S.C. §§ 1229b(a)(3), 1229c(b)(1)(C).  Payne argued to the Immigration Judge ("IJ") that the statutory provisions that barred him from cancellation of removal were unconstitutional.  The IJ denied the petition on September 16, 2004, stating that he was without jurisdiction to decide any constitutional claims.  The Board of Immigration Appeals ("BIA") affirmed on the same basis.

On appeal, Payne--who has two children born in the United States--argues that the Fifth Amendment of the Constitution provides his children the right to have their father reside in the United States.  Payne goes on to cite numerous studies documenting the harm suffered by children raised by only one parent.  Payne also appeals to international law and cites language from

-2-

international treaties. Our jurisdiction to review the BIA's decision is based on 8 U.S.C. § 1252(a).

The government objects that Payne lacks standing to assert his children's rights. The restriction as to assertion of third-party rights is merely prudential rather than based on Article III, Benjamin v. Aroostook Med. Ctr., Inc., 57 F.3d 101, 104-06 (1st Cir. 1995); see also Powers v. Ohio, 499 U.S. 400, 410-11 (1990); but, says the government, Payne has not troubled to bring himself within the jus tertii exceptions which courts have customarily recognized.

Nevertheless, the requirements in Powers, 499 U.S. at 410-11, appear easily met in this instance: potential injury in fact to the children and to Payne; a close relationship (here, parental); and "some hindrance to the third party's ability to protect his or her own interest"--rather obvious in the case of minor children. And no conflict exists here between the interests of parent and child. Cf. Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 15-16 (2004). We choose to follow the path of other courts and address the issues on the merits. See, e.g., Robles v. INS, 485 F.2d 100, 102 (10th Cir. 1973); Newton v. INS, 736 F.2d 336, 342 (6th Cir. 1984).

The circuits that have addressed the constitutional issue (under varying incarnations of the immigration laws and in varying procedural postures) have uniformly held that a parent's otherwise

valid deportation does not violate a child's constitutional right.[1]
Nor does deportation necessarily mean separation since the children
could be relocated during their minority. See Ayala-Flores, 662
F.2d at 445-46.

Payne cites several Supreme Court cases recognizing in
various contexts some kind of protection-worthy interest in family

---

[1]See, e.g., Gallanosa v. United States, 785 F.2d 116, 120 (4th
Cir. 1986) ("The courts of appeals that have addressed this issue
have uniformly held that deportation of the alien parents does not
violate any constitutional rights of the citizen children."); 
Cortez-Flores v. INS, 500 F.2d 178, 180 (5th Cir. 1974)
("[D]eportation of a parent does not deprive the child of any
constitutional rights."); Gonzalez-Cuevas v. INS, 515 F.2d 1222,
1224 (5th Cir. 1975) ("Legal orders of deportation to their parents
do not violate any constitutional right of citizen children . . .
."); Ayala-Flores v. INS, 662 F.2d 444, 445 (6th Cir. 1981) (per
curiam) ("While we recognize that the Ayalas' child enjoys all the
rights of United States citizenship . . . we do not agree that
deportation of her parents is an unconstitutional abridgement of
those rights."); Newton, 736 F.2d at 342 (stating that circuit
courts have "uniformly" held that the deportation of parents does
not deprive their children of constitutional rights); Singh v.
Magee, 165 F.3d 917, 1998 WL 904715, at *3 (9th Cir. 1998)
(unpublished opinion) (in Bivens action, accepting a broad
rejection of any challenge "to a deportation based upon the rights
of affected family members"); Flores-Quezada v. Gonzales, No. 04-
72636, 2005 WL 1413864 (9th Cir. June 17, 2005) (unpublished
opinion) (holding that deportation does not result in deprivation
of due process where a child would be denied the Arizona
constitutional right to education); Robles, 485 F.2d at 102
(rejecting the argument that it is unconstitutional to break up a
family and deprive children of "constitutional right to a
continuation of the family unit"); Cervantes v. INS, 510 F.2d 89,
92 (10th Cir. 1975) ("The incidental impact on aliens' minor
children caused by the enforcement of duly-enacted conditions on
aliens' entrance and residence does not create constitutional
problems."); Delgado v. INS, 637 F.2d 762, 764 (10th Cir. 1980)
("This Court has repeatedly held that the incidental impact visited
upon the children of deportable, illegal aliens does not raise
constitutional problems.").

integrity and the right of parents to raise their children. Cited cases include Troxel v. Granville, 530 U.S. 57, 65 (2000); Santosky v. Kramer, 455 U.S. 745 (1982); Moore v. East Cleveland, 431 U.S. 494 (1977); Stanley v. Illinois, 405 U.S. 645, 651 (1972). The familiar antecedent decisions include Meyer v. Nebraska, 262 U.S. 390 (1923); Pierce v. Society of the Sisters, 268 U.S. 510 (1925); and Prince v. Massachusetts, 321 U.S. 158 (1944). But the cases are widely diverse--some involving procedural or equal protection claims not pertinent here, e.g., Stanley, Santosky--and are notable for the division of views in most of the cases and for the difficulty of fitting the analyses or results into a coherent pattern.

Nothing in these Supreme Court cases points directly toward the result Payne seeks nor does his brief try to build the bridge. If what were happening here was conscience shocking by contemporary American standards, the lack of precedent would not bar a new departure by a lower court; but deportations of parents are routine and do not of themselves dictate family separation. If there were such a right, it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service.

The treaties cursorily relied on by petitioner either have been held to be non-self executing (the International Covenant on Civil and Political Rights) or are non-ratified (the Convention on the Rights of the Child).[2]  They thus do not have the force of domestic law.  Guaylupo-Moya v. Gonzales, 423 F.3d 121, 133 (2d Cir. 2005); see also Igartua-De La Rosa v. United States, 417 F.3d 145, 148-49 (1st Cir. 2005) (en banc), cert. denied, 126 S. Ct. 1569 (2006).  And, even if (as Payne claims but we do not decide) customary international law conflicted with the statutes, the clear intent of Congress would control.  Guaylupo-Moya, 423 F.3d at 135-36.

Payne quotes heavily from Beharry v. Reno, 183 F. Supp. 2d 584, 604-05 (E.D.N.Y. 2002), which held that U.S. treaty obligations required providing all aliens who met the other requirements of the waiver provision at issue the opportunity to apply for a waiver of removal where their crimes were committed prior to being defined as aggravated felonies.  The Second Circuit reversed the decision on other grounds, Beharry v. Ashcroft, 329 F.3d 51 (2003), and the language of the district court on which Payne relies was later disavowed.  Guaylupo-Moya, 423 F.3d at 125.

Affirmed.

---

[2]International Covenant on Civil and Political Rights art. 23, opened for signature Dec. 19, 1966, 999 U.N.T.S 171, reprinted in 6 I.L.M. 360; Convention on the Rights of the Child, adopted Nov. 20, 1989, 1577 U.N.T.S. 3, reprinted in 28 I.L.M. 1448 (quoted without full citation by petitioner).