*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0288p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

YOUSEFF HAMDI, on behalf of SAMI HAMDI, a
minor child,

               *Plaintiff-Appellant,*

     *v.*

JANET NAPOLITANO, in her official capacity
as Secretary of Homeland Security; DISTRICT
DIRECTOR, DEPARTMENT OF HOMELAND
SECURITY,

               *Defendants-Appellees.*

No. 09-3285

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 09-00030—Walter H. Rice, District Judge.

Argued: January 22, 2010

Decided and Filed: September 7, 2010

Before: MERRITT, MOORE, and GIBBONS, Circuit Judges.

_____

## COUNSEL

**ARGUED:** George A. Katchmer, Jr., Yellow Springs, Ohio, for Appellant. Samuel P. Go, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Appellees. **ON BRIEF:** George A. Katchmer, Jr., Yellow Springs, Ohio, for Appellant. Samuel P. Go, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Appellees.

     MOORE, J., delivered the opinion of the court, in which MERRITT, J., joined. GIBBONS, J. (pp. 20-21), delivered a separate concurring opinion.

1

———————————

**OPINION**

———————————

KAREN NELSON MOORE, Circuit Judge.  Sami Hamdi, the minor child of an undocumented immigrant, filed a complaint under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702, to prohibit the Department of Homeland Security ("DHS") from removing his mother on the ground that the mother's removal violated his own constitutional rights as an American citizen.  Hamdi is severely disabled and is dependent on his mother's care.  The district court dismissed the complaint for lack of jurisdiction under 8 U.S.C. § 1252(g), finding that Hamdi brought his complaint "on behalf of" his mother and that no other statutory or nonstatutory laws provided jurisdiction.  Hamdi appeals, arguing first that the "on behalf of any alien" language in § 1252(g) does not bar jurisdiction over an action brought under the DJA to protect the distinct constitutional rights of a minor child affected by a parent's removal proceedings, and, second, that the Constitution, international law, and "the customs and usages of civilized nations" provide jurisdiction under the APA for a minor child to challenge a parent's removal proceedings.  For the reasons that follow, we conclude that Hamdi's arguments are without merit and that the district court was correct to dismiss Hamdi's complaint, although we ground our decision on the basis that Hamdi has failed to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On January 26, 2009, Hamdi filed a complaint under the DJA and the APA requesting that the district court declare that DHS's removal proceeding involving his mother, Fatiha Elgharib, is contrary to law under the U.S. Constitution and international law because Hamdi is a U.S. citizen, has Down syndrome and numerous medical issues, and is dependent on his mother for his care and well-being.  Specifically, Hamdi's complaint alleges:

10. Plaintiffs' [sic] father is being prevented from pursuing a remedy available to him in law in violation of his right to due process of law,

11. The separation of this severely handicapped child from his mother constitutes a form of cruel and unusual punishment to this child,

12. The separation of this severely handicapped American child from his mother and primary caretaker treats this child and his family differently from other children in the State of Ohio since the standard relating to children in domestic and juvenile law in the State of Ohio is that of the best interest of the child and thus is violative of the Equal Protection of the law,

13. The separation from his mother deprives this child of the continued love, affection and care of his mother and primary caretaker in violation of the Ninth Amendment to the United States Constitution,

14. The separation of this severely handicapped child from his mother violates the principles of international treaties and declarations of which the United States is a signatory to wit: The Universal Declaration of Human Rights, UNGA, Resolution 217 (III), 10 Dec. 1948, International Covenant on Economic, Social and Cultural Rights, UNGA Res. 220A (XXI), 16 Dec. 1966 (IESCR), Universal Declaration Art. 12 ECHR, Convention on the Rights of the Child, 1989 UNGA Res. 44/25, 20 Dec. 1989, Arts. 9 and 16.

Dist. Ct. Doc. ("Doc.") 2 (Compl. at ¶¶ 10–14). Hamdi claimed jurisdiction was proper in the U.S. District Court for the Southern District of Ohio under the DJA and the APA because

the Plaintiff's mother, Fatiha Elgharib has been ordered removed from the United States in violation of the Constitution of the United States specifically the Due Process Clause of the Fifth and Fourteenth Amendments, the Equal Protection Clause, the Eighth Amendment, the Ninth Amendment and international treaties of which the United States is a signatory: The Universal Declaration of Human Rights, UNGA, Resolution 217 (III), 10 Dec. 1948, International Covenant on Economic, Social and Cultural Rights, UNGA Res. 220A (XXI), 16 Dec. 1966 (IESCR), Universal Declaration Art. 12 ECHR, Convention on the Rights of the Child, 1989 UNGA Res. 44/25 , 20 Dec. 1989, Arts. 9 and 16.American citizen children of illegal aliens may file declaratory judgment action since such actions do not violate the Real ID Act, *See*,

> ***Kruer v. Gonzales*** (E.D. Kentucky, June 28, 2005), 2005 U.S. Dist.
> LEXIS 13030.

*Id.* (Compl. Jurisdictional Statement) (formatting errors in original).

DHS filed a motion to dismiss for lack of subject-matter jurisdiction on February 11, 2009, in lieu of an answer to the complaint, asserting first that Hamdi did not have standing to bring the suit without a separable injury from his mother's removal proceeding, and, alternatively, that 8 U.S.C. § 1252(b)(9) and (g) preclude jurisdiction and the complaint failed to establish jurisdiction under the DJA, the APA, or other international laws.  Hamdi responded on February 20, 2009.  In a March 6, 2009 decision, the district court rejected DHS's contention that Hamdi could not satisfy standing requirements because it found that Hamdi's allegation that his mother's removal would deprive him of his primary caregiver was a sufficient injury in fact.  Doc. 11 (Dist. Ct. Op. at 2–3).  However, the court granted DHS's motion to dismiss, concluding that 8 U.S.C. § 1252(g) barred Hamdi's complaint as one initiated "on behalf of any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien."[1]  8 U.S.C. § 1252(g).  The district court construed "on behalf of" as analogous to "in the interest of," and it found that Hamdi's complaint fell within § 1252(g) because Hamdi's only redress was to prevent his mother's removal—something that his mother had been unsuccessful in accomplishing previously through separate litigation.  Doc. 11 (Dist. Ct. Op. at 4 (citing *United States v. Romero*, 293 F.3d 1120, 1126 (9th Cir. 2002) (interpreting the "on behalf of" language under the Sentencing Guidelines with reference to WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY))).

The district court also rejected Hamdi's other asserted bases for subject-matter jurisdiction, concluding that neither the DJA nor the APA could provide independent

---

[1]Section 1252(g), "Exclusive jurisdiction," states:
Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

sources of subject-matter jurisdiction, that none of the treaties Hamdi cited were binding, and that Hamdi had failed to establish how any alleged "customs and usages of civilized nations" could provide a basis for subject-matter jurisdiction. *Id.* (Dist. Ct. Op. at 5–7). In the same order, the district court anticipatorily denied a motion to stay Hamdi's mother's removal pending appeal. *Id.* at 7–8.

Hamdi appeals from the dismissal of his claims.[2] A separate panel of this court denied Hamdi's motion to stay his mother's removal pending this appeal, but, on April 2, 2009, DHS, through the U.S. Immigration and Customs Enforcement agency ("ICE"), stayed her removal for one year.

## II. ANALYSIS

We review de novo a district-court decision to dismiss a complaint for lack of subject-matter jurisdiction, and we accept any factual findings that the district court

---

[2]The district-court order stated in a footnote that the same reasoning that required the court to dismiss Hamdi's claims related to his mother's order of removal also prevented the court from exercising jurisdiction over the complaint allegations related to Hamdi's father's immigration issues. Doc. 11 (Dist. Ct. Op. at 2 n.1). Hamdi's brief on appeal did not raise any arguments related to his father's immigration status, and we do not address any potential issues related thereto.

made in its analysis unless it committed clear error.[3] *Davis v. United States*, 499 F.3d 590, 593–94 (6th Cir. 2007).

On appeal, the parties focused their briefing on whether 8 U.S.C. § 1252(g) barred the district court from exercising subject-matter jurisdiction over Hamdi's complaint and whether Hamdi was sufficiently aggrieved by agency action to state a claim providing subject-matter jurisdiction under the APA. Neither the parties nor the district court discussed whether Hamdi could assert subject-matter jurisdiction under general federal-question jurisdiction pursuant to 28 U.S.C. § 1331, and whether the district court, by grounding its decision in 8 U.S.C. § 1252(g), avoided the potential jurisdictional impact of 8 U.S.C. § 1252(b)(9) that DHS raised below. Although neither party specifically addressed 28 U.S.C. § 1331 on appeal, we are "'under an independent obligation to examine' [our] own jurisdiction," *Baird v. Norton*, 266 F.3d 408, 410 (6th Cir. 2001) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)), and that of the district court to determine whether Hamdi's complaint could be adjudicated under any grounds supported in the complaint, *Estate of Mueller v. Comm'r*, 153 F.3d 302, 304

---

[3]The district court decided DHS's motion to dismiss entirely on the grounds that the complaint failed to establish subject-matter jurisdiction, because DHS's arguments in its memorandum of law accompanying its motion had focused primarily on this ground. However, DHS also stated in its motion that Hamdi's complaint failed to state a claim upon which relief can be granted, albeit with a citation only to Fed. R. Civ. P. 12(b)(1), and DHS's accompanying memorandum of law included arguments related to the merits of Hamdi's claims. *See* Doc. 7 (Mot. to Dismiss). Although inartfully drafted, DHS's jurisdictional arguments may also be construed as arguments that Hamdi has failed to state a claim upon which relief may be granted because he has no meritorious constitutional claim, and no federal court may review his mother's order of removal. Because the merits of Hamdi's claim are relevant for our analysis of subject-matter jurisdiction under the APA and for whether his claim is redressable, we may address both aspects of DHS's motion on de novo review. *See Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1007–08 (6th Cir. 2009) (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 917 (6th Cir. 1986) ("reviewing an issue raised under Rule 12(b)(1) 'as if plaintiff had filed a Rule 12(b)(6)'")). Here, both parties briefed the viability of Hamdi's constitutional claims and the impact of the jurisdictional-bar provisions of § 1252 under their argument headings related to § 1252(g) and the APA, and no additional argument from either party would alter our ultimate decision on subject-matter jurisdiction or failure-to-state-a-claim grounds. As this court has recognized,

> "Generations of jurists have struggled with the difficulty of distinguishing between Rules 12(b)(1) and 12(b)(6) in federal question cases . . . ." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996). In theory, the difference is clear: "the former determines whether the plaintiff has a right to be in the particular court and the latter is an adjudication as to whether a cognizable legal claim has been stated." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004). Yet in practice, "the difference between the two motions is often difficult to discern." *Id.*

*Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 517 (6th Cir. 2006) (alteration in original). Indeed, it would have been error for the district court to rule on any merits questions after deciding that it lacked subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

(6th Cir. 1998). We may determine that the motion to dismiss for lack of subject-matter jurisdiction should have been denied if facts pleaded in the complaint are sufficient to infer jurisdiction. *O'Bryan v. Holy See*, 556 F.3d 361, 375–76 (6th Cir.), *cert. denied*, 130 S. Ct. 361 (2009); 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1350, at 200–01 (3d ed. 2004) ("[I]f the allegation of the district court's jurisdiction is insufficient or entirely lacking but there are facts pleaded in the complaint from which the court's jurisdiction may be inferred, then the motion to dismiss under Rule 12(b)(1) motion also must be denied."). However, we may affirm the district court's dismissal for reasons other than those stated if dismissal is appropriate. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009); *Apple v. Glenn*, 183 F.3d 477, 479–80 (6th Cir. 1999).

We will address each jurisdictional issue in turn, taking care to remember "a familiar principle of statutory construction: the presumption favoring judicial review of administrative action." *Kucana v. Holder*, 130 S. Ct. 827, 839 (2010). Even so, we address these issues mindful that the Supreme Court recently reasserted that "[a] statute affecting federal jurisdiction 'must be construed both with precision and with fidelity to the terms by which Congress has expressed its wishes.'" *Id.* at 840 (quoting *Cheng Fan Kwok v. INS*, 392 U.S. 206, 212 (1968)).

**A.    The Jurisdictional Bar of 8 U.S.C. § 1252(g) Does Not Apply to Independent Actions Brought by a Citizen Child Raising Distinct Constitutional Rights**

The district court dismissed Hamdi's complaint in part on the basis of the jurisdictional bar in § 1252(g). Section 1252(g) precludes the federal courts from exercising subject-matter jurisdiction over "any cause or claim by or on behalf of any alien arising from the decision or action by [DHS][4] to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). DHS maintains that the district court properly interpreted Hamdi's

---

[4]Section 1252(g) specifically references "the Attorney General"; however, as a result of the Homeland Security Act of 2002, all statutory references to the Attorney General in immigration statutes are construed as referencing the appropriate DHS official. *See Elgharib v. Napolitano*, 600 F.3d 597, 606–07 (6th Cir. 2010).

complaint as brought "on behalf of" his mother, an alien in removal proceedings, because his allegations and the relief requested are "in the interest of" his mother and inextricably intertwined with his mother's removal order. Hamdi argues that this action is brought "on behalf of" himself to enforce his own constitutional rights violated by the order of his mother's removal and that his mother is only an incidental beneficiary in the action. We agree with Hamdi, and conclude that § 1252(g) does not preclude the district court from exercising jurisdiction over Hamdi's complaint because the complaint adequately raises his independent claims on his own behalf.

The proper interpretation of the "on behalf of" language in § 1252(g) is a matter of first impression in this circuit (and apparently in all circuits). We review de novo such questions of statutory interpretation, *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008), employing a three-step legislative-interpretation framework established by the Supreme Court: "'first, a natural reading of the full text; second, the common-law meaning of the statutory terms; and finally, consideration of the statutory and legislative history for guidance,'" *Lockhart v. Napolitano*, 573 F.3d 251, 255 (6th Cir. 2009) (quoting *United States ex rel. A+ Homecare, Inc. v. Medshares Mgmt. Group, Inc.*, 400 F.3d 428, 442 (6th Cir. 2005) (citing *United States v. Wells*, 519 U.S. 482, 490–92 (1997))). The "natural reading of the full text" requires that we examine the statute for its plain meaning, including "'the language and design of the statute as a whole.'" *Id.* (quoting *Parrett*, 530 F.3d at 429). "If the statutory language is not clear, we may examine the relevant legislative history." *Parrett*, 530 F.3d at 429.

We conclude that Hamdi's claims do not fall within the meaning of § 1252(g). Although many courts have dismissed actions brought by, or asserting the rights of, a citizen child, few courts have addressed § 1252(g). Dictionary definitions are not extremely helpful to our analysis. BLACK'S LAW DICTIONARY (9th ed. 2009) does not define the phrase "on behalf of" or "behalf"[5]; MERRIAM-WEBSTER (11th ed. 2004)

---

[5]BLACK'S LAW DICTIONARY does define "representation" in part as "[t]he act or an instance of standing for or acting *on behalf of* another, esp. by a lawyer on behalf of a client"; the definition of "representative" includes "[o]ne who stands for or acts *on behalf of* another." BLACK'S LAW DICTIONARY (9th ed. 2009) (representation definition 2; representative definition 1) (emphases added). GARNER'S MODERN AMERICAN USAGE (3d ed. 2009) defines "behalf" with reference to two phrases, stating "[*i*]n

defines the phrase as "in the interest of; *also*: as a representative of," and further defines "behalf" as "interest, benefit; *also*: support, defense." We have found only two courts that have directly addressed the impact of § 1252(g) on a citizen child's complaint. In *Kruer v. Gonzales*, No. 05-120-DLB, 2005 WL 1529987 (E.D. Ky. June 28, 2005) (unpublished opinion), the district court rejected the applicability of the jurisdictional bars in § 1252(a)(5)[6] and (g) because "the face of the children's Petition does not indicate it is being brought on their mother's behalf, though this be the indirect result of their filing," and "research reveals no binding authority so interpreting the statute [as brought on the mother's behalf]." *Id.* at *2 n.3. The *Kruer* district court found § 1252(a)(5) implicitly limited its applicability to review sought by the individual subject to the removal order. *Id.* at *3. With this conclusion, the *Kruer* district court "accept[ed]" jurisdiction of the citizen children's action and rejected the merits with prejudice. *Id.* at *9 (summarizing holding by "accepting" that court had jurisdiction and that plaintiffs had standing). In *Coleman v. United States*, 454 F. Supp. 2d 757 (N.D. Ill. 2006), the district court held that § 1252(g) did not apply to bar jurisdiction because the citizen child's suit presented the child's own rights and a separate redressable injury that would only incidentally benefit the immigrant parent. *Id.* at 763–66. Relying on precedents favoring narrow construction of jurisdictional limits, the district court looked solely to what "the plain text makes clear" and reasoned that "[s]ection 1252(g) does not apply here because that statute does not bar claims by citizens (because such claims are not brought 'by . . . any alien') alleging that removal orders violate the citizen's distinct personal rights (because such claims are not 'on behalf of any alien')." *Id.* at 765 (citing *Maldonado v. Fasano*, 67 F. Supp. 2d 1170, 1173–74 (S.D. Cal. 1999) (citing *Lindahl v. Office of Personnel Mgmt.*, 470 U.S. 768, 779–80 (1985)); *Webster v. Doe*, 486 U.S. 592, 603 (1988)).

---

*behalf of* means 'in the interest or for the benefit of' . . . ; *on behalf of* means 'as the agent or representative of.'"

[6]Section 1252(a)(5) defines "judicial review" for purposes of § 1252 and establishes that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." 8 U.S.C. § 1252(a)(5).

We find the reasoning in *Coleman* persuasive. We recognize that the provisions of 8 U.S.C. § 1252 are intended to narrow the availability of judicial review for removal orders, precluding federal courts from exercising subject-matter jurisdiction over many claims related to a final order of removal. *See Kucana*, 130 S. Ct. at 838 (emphasizing that Congress's "aggressive[]" amendments to § 1252 were intended "to expedite removal of aliens lacking a legal basis to remain in the United States"); *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482–86 (1999). We must be cautious, however, not to interpret broadly jurisdiction-stripping provisions in the absence of explicit congressional intent. *AADC*, 525 U.S. at 480–82; *Prado v. Reno*, 198 F.3d 286, 290 (1st Cir. 1999) ("In [*AADC*], the Supreme Court taught that interpreting the jurisdiction limiting provisions of IIRIRA requires a close textual reading and that restrictions on jurisdiction should conform tightly to the precise language chosen by Congress.").

While it is in Hamdi's own interest to litigate his claims that his mother's removal order violates his distinct constitutional rights, it plainly would benefit her as well if Hamdi were to be successful and to secure the relief he seeks—judicial review and cancellation of his mother's removal order. One could argue that Hamdi is asking the federal courts to take his mother's substantive arguments and convert them into his own action seeking the relief that she has been denied, but the remedy Hamdi seeks does not dictate the substance of his complaint. *Mustata v. U.S. Dep't of Justice*, 179 F.3d 1017, 1021–23 (6th Cir. 1999) (distinguishing an ineffective-assistance-of-counsel claim asking for a stay of a deportation order from a § 1252(g) challenge to the execution of the order itself); *cf. Aguilar v. U.S. Immigration & Customs Enforcement Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 16–17 (1st Cir. 2007) (holding § 1252(b)(9) barred 28 U.S.C. § 1331 jurisdiction even though available on face of undocumented aliens' complaint because "substance trumps form" and "we must look through such easy evasions as creative labeling and consider the fundamental nature of the claims asserted . . . [to not] allow collective end runs around congressional directives" (citing, inter alia, *Nashville, C. & St. L. Ry. v. Wallace*, 288 U.S. 249, 259 (1933); *Penhallow v. Doan's Adm'rs*, 3 U.S. (3 Dall.) 53, 104 (1795))). We hold that a complaint brought by a U.S.

citizen child who asserts his or her own distinct constitutional rights and separate injury does not fall fairly within the "on behalf of any alien" jurisdictional bar in § 1252(g). Hamdi challenges the constitutionality of the final order of removal for his mother, but his claim asserts his own distinct constitutional rights.   Thus, the district court improperly relied upon § 1252(g) in dismissing Hamdi's complaint.

## B.     The Administrative Procedure Act Does Not Provide Subject-Matter Jurisdiction Here

Hamdi argues in the alternative that his constitutional- and international-law-based claims provide a basis for subject-matter jurisdiction under the APA.[7] This circuit has not yet addressed whether the APA can *provide* jurisdiction for citizen children to challenge *immigration proceedings*, but we now conclude that Hamdi's attempt to assert subject-matter jurisdiction solely under the APA is unavailing.   To utilize the APA, Hamdi must have alleged sufficiently that he is "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."   5 U.S.C. § 702; *Bangura v. Hansen*, 434 F.3d 487, 498–500 (6th Cir. 2006).   The Supreme Court has held, however, that "[i]mmigration proceedings . . . are not governed by the APA" because "Congress intended the provisions of the Immigration and Nationality Act of 1952 (INA) . . . to supplant the APA in immigration proceedings."[8] *Ardestani v. INS*, 502 U.S. 129, 133–34 (1991) (citing *Marcello v. Bonds*, 349 U.S. 302 (1955)); *Robert v. Reno*, 25 F. App'x 378, 381 (6th Cir. 2002) (unpublished opinion) ("The APA simply does not govern immigration proceedings under the INA and may not be used to challenge the hearing provisions of the INA."). *But see Acosta v. Gaffney*, 558 F.2d 1153, 1156–58 (3d Cir. 1977) (holding citizen child had standing under the APA and 8 U.S.C. § 1329

---

[7]Hamdi actually did not contest the district court's denial of jurisdiction under the DJA on appeal but rather focused on § 1252(g) and the APA.   Were we to address the applicability of the DJA, we would conclude that it also does not *provide* subject-matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (holding Congress enlarged the range of available federal court remedies, not jurisdiction, under the DJA because "[i]t is well-settled that the [DJA] cannot serve as an independent basis for federal subject matter jurisdiction").

[8]Indeed, 8 U.S.C. § 1252(a)(1) specifically states that "[j]udicial review of a final order of removal . . . is governed only by chapter 158 of Title 28, *except as provided in subsection (b) of this section*."   8 U.S.C. § 1252(a)(1) (emphasis added).   We discuss below the impact of subsection (b) on Hamdi's claims.

to assert a constitutional challenge to parents' removal but no constitutional right to prohibit removal).  As a result, the APA does not provide subject-matter jurisdiction in the instant case to the extent that Hamdi seeks review of his mother's order of removal. Instead, the APA's general waiver of sovereign immunity with respect to non-monetary claims applies to allow Hamdi's distinct constitutional claims to proceed under the district court's general federal-question subject-matter jurisdiction of 28 U.S.C. § 1331, *see United States v. City of Detroit*, 329 F.3d 515, 520–21 (6th Cir. 2003) (en banc), especially in light of "the presumption favoring judicial review of administrative action," *Kucana*, 130 S. Ct. at 839; *see also Ikenokwalu-White v. Gonzales*, 495 F.3d 919, 925–26 (8th Cir. 2007) (reaffirming, in the context of a citizen-child's suit, that "the Administrative Procedure Act, 5 U.S.C. § 701, et seq., may in some instances serve as a waiver of the federal government's sovereign immunity, and through the general federal question jurisdiction of 28 U.S.C. § 1331, empower the federal district courts to hear timely appeals from certain Board orders" (citing *Sabhari v. Reno*, 197 F.3d 938, 942–43 (8th Cir. 1999))); *accord Ginters v. Frazier*, — F.3d —, 2010 WL 3034894, *4–5 (8th Cir. 2010) (affirming the continuing validity of *Sabhari* after the enactment of § 1252(a)(2)(B) and the Supreme Court's decision in *Kucana*).

**C.      Federal-Question Subject-Matter Jurisdiction Under 28 U.S.C. § 1331 Is Appropriate**

**1.  A Citizen Child Raising Distinct Constitutional Rights May Assert Federal-Question Subject-Matter Jurisdiction**

We agree with the district court that Hamdi has asserted a sufficient injury in fact for standing purposes, but we conclude that the district court erred in not recognizing that the constitutional nature of Hamdi's alleged injury, apparent on the face of the complaint, provided subject-matter jurisdiction as a federal question within the meaning of 28 U.S.C. § 1331.  *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 56 (1993) (holding that a challenge to regulations used in adjustment-of-status applications was not lacking a statutory jurisdiction source "since 28 U.S.C. § 1331, generally granting federal question jurisdiction, 'confer[s] jurisdiction on federal courts to review agency action'" (quoting *Califano v. Sanders*, 430 U.S. 99, 105 (1977))).  "A plaintiff properly

invokes § 1331 jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006).

In addressing Hamdi's standing to bring this claim before the district court and in its arguments related to the APA on appeal, DHS argues that subject-matter jurisdiction is lacking because Hamdi has failed to assert a violation of a constitutionally protected right. However, "[j]urisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (internal quotation marks and alterations omitted). Even so, "[a] claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" *Arbaugh*, 546 U.S. at 513 n.10 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). We previously have explained the propriety of dismissal on this basis:

> "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of New York v. County of Oneida*, 414 U.S. 661, 666 (1974)). This requirement of substantiality or non-frivolousness of the federal question refers "to whether there is any legal substance to the position the plaintiff is presenting." 13B CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3564 (2d ed.1984).

*Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 519 (6th Cir. 2006); *see also Aichai Hu v. Holder*, 335 F. App'x 510, 514 (6th Cir. 2009) (unpublished opinion) ("A claim is not colorable if it is immaterial and asserted only to support jurisdiction, or if it is utterly insubstantial and frivolous."). Although many circuit-court precedents, including some from this circuit, may undermine Hamdi's constitutional claims, we cannot say that

his claims may be dismissed for lack of subject-matter jurisdiction on the grounds of insubstantiality or frivolousness.[9]

### 2.     Dismissal Was Proper Because Hamdi Fails to State a Constitutional Claim Upon Which Relief May Be Granted

Hamdi has failed to state a claim upon which relief can be granted because federal district courts are prohibited from reviewing and vacating a removal order, the ultimate relief that Hamdi seeks.  Hamdi's complaint can be reduced to the claim that because Hamdi has constitutional rights that his mother's order of removal adversely affects, and because DHS did not consider Hamdi's rights in imposing his mother's order of removal, Hamdi is entitled to relief.  His requested relief is that the federal district court should review his mother's order of removal and, taking proper account of his constitutional rights, cancel that removal order.  In its arguments below, DHS asserted that § 1252(a)(5)[10] and § 1252(b)(9),[11] operating independently from § 1252(g), precluded the district court from exercising subject-matter jurisdiction over Hamdi's

---

[9]Hamdi also relies on international treaties and "the customs and usages of civilized nations" to assert subject-matter jurisdiction.  Because we conclude that jurisdiction is available based on Hamdi's constitutional claims, we need not decide whether Hamdi could establish subject-matter jurisdiction on these bases.

[10]§ 1252(a)(5) Exclusive means of review
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) of this section.  For purposes of this chapter, in every provision that limits or eliminates judicial review or jurisdiction to review, the terms "judicial review" and "jurisdiction to review" include habeas corpus review pursuant to section 2241 of Title 28, or any other habeas corpus provision, sections 1361 and 1651 of such title, and review pursuant to any other provision of law (statutory or nonstatutory).

[11]§ 1252(b) Requirements for review of orders of removal
With respect to review of an order of removal under subsection (a)(1) of this section, the following requirements apply: . . . (9) Consolidation of questions for judicial review
Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section [§ 1252], no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

claim. Although we acknowledge that the provisions of 8 U.S.C. § 1252, even apart from § 1252(g) discussed above, are intended to narrow the availability of judicial review of removal orders and for claims arising from a final order of removal, *see Kucana*, 130 S. Ct. at 838–39; *AADC*, 525 U.S. at 482–86, we conclude that the scope of the jurisdictional bar in § 1252(b)(9) does not preclude the district court from exercising subject-matter jurisdiction over Hamdi's claim. However, § 1252(b)(9) does operate to preclude the district court from providing the particular relief that Hamdi seeks—judicial review of his mother's order of removal and cancellation of that order.

In *Nken v. Holder*, 129 S. Ct. 1749, 1755 (2009), the Supreme Court explained the "changes in judicial review of immigration procedures brought on by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), 110 Stat. 3009-546, which substantially amended the Immigration and Nationality Act (INA), 8 U.S.C. § 1101 et seq.,":

> The new review system substantially limited the availability of judicial review and streamlined all challenges to a removal order into a single proceeding: the petition for review. *See, e.g.*, 8 U.S.C. § 1252(a)(2) (barring review of certain removal orders and exercises of executive discretion); § 1252(b)(3)(C) (establishing strict filing and briefing deadlines for review proceedings); § 1252(b)(9) (consolidating challenges into petition for review).

*Id.* Although § 1252(b)(9) has been described as the "unmistakable 'zipper' clause," *AADC*, 525 U.S. at 483, its scope reaches only claims for judicial review "arising from any action taken or proceeding brought to remove an alien." § 1252(b)(9). The Supreme Court has contrasted § 1252(b)(9) with § 1252(g), stating that § 1252(b)(9) is a broader jurisdictional limitation for review of the legality of final orders of removal than § 1252(g) and demonstrates "the normal manner of imposing such a [general jurisdictional] limitation" for "all claims arising from deportation proceedings." *AADC*, 525 U.S. at 482–83; *see Muka v. Baker*, 559 F.3d 480, 483–85 (6th Cir. 2009) (explaining impact of § 1252(a)(5) & (b)(9) to channel judicial review of legality of removal orders). "By its terms, the provision aims to consolidate '*all* questions of law

and fact' that 'arise from' either an 'action' or a 'proceeding' brought in connection with the removal of an alien." *Aguilar*, 510 F.3d at 9.

Indeed, § 1252(b)(9) "is a judicial channeling provision, not a claim-barring one." *Id.* at 11. We, like the First Circuit in *Aguilar*, cannot endorse an interpretation of the "arising from" language in § 1252(b)(9) that "swallow[s] all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien." *Id.* at 10.

> Furthermore, if Congress had intended to accomplish so far-reaching a result, it could have used broader language. *Cf. McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991) (suggesting that if Congress intended a certain provision of the INA to be read more expansively, it could have used more expansive language). For example, Congress would have used the term "related to" instead of "arising from." *See Humphries*[ *v. Various Fed. USINS Employees*], 164 F.3d [936,] 943[ (5th Cir. 1999)] (suggesting that "related to" signifies a somewhat looser nexus than "arising from").

*Id.* Here, Hamdi's claim raises his distinct constitutional rights that he alleges his mother's removal order adversely affects. We can decide this issue of Hamdi's constitutional rights separately from the merits of the order of his mother's removal itself because this issue of Hamdi's rights is distinct from the question of whether his mother's order of removal is invalid based on DHS's failure to consider the effects of his potential separation from his mother. *See id.* at 11 ("[R]emoval proceedings are confined to determining whether a particular alien should be deported." (citing 8 U.S.C. § 1229a(c)(1)(A))). A judicial determination that Hamdi's constitutional rights are violated by separation from his mother is distinct from judicial determination of questions "arising from any action taken or proceeding brought to remove an alien."[12] § 1252(b)(9); *see McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494–96 (1991)

---

[12]*See, e.g.*, *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2–3 (1st Cir. 2007) (holding petitioner parent had standing to raise citizen children's Fifth Amendment claim related to his removal proceedings, but removal did not violate children's constitutional rights to have father present in country); *Newton v. INS*, 736 F.2d 336, 342 (6th Cir. 1984) ("'[A] minor child who is fortuitously born here due to his parents' decision to reside in this country, has not exercised a deliberate decision to make this country his home, and Congress did not give such a child the ability to confer immigration benefits on his parents . . . .'" (quoting *Perdido v. INS*, 420 F.2d 1179, 1181 (5th Cir. 1969))).

(distinguishing *Heckler v. Ringer*, 466 U.S. 602 (1984), on ground that granting general federal-question jurisdiction would not have effect of deciding the merits of claims in a proceeding separate from and prior to the prescribed judicial-review process under the relevant statute). This approach does not disregard "Congress['s] plain[] inten[tion] to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings," *Aguilar*, 510 F.3d at 9, and instead is consistent with precedents that have allowed challenges to proceed in the district court because the petitioner did not challenge the order of removal[13] or because an available remedy would not affect the order of removal.[14] *See id.* at 10–12 (finding support for "a bounded reading of [§ 1252(b)(9)]" in "the fact that certain claims are excluded from the sweep of section 1252(b)(9) by virtue of legislative intent [i.e., habeas review of detention] and judicial precedent [i.e., legality of detention and bail availability]").

Even though we conclude that § 1252(b)(9) does not bar Hamdi's claim from proceeding under general federal-question subject-matter jurisdiction, we must still consider the district court's ability to grant the remedy requested. A claim can be sufficient for subject-matter jurisdiction purposes "even if it is unsuccessful and possibly verging on the foolhardy in light of prior precedent barring the relief sought." *Primax*, 433 F.3d at 519 (internal quotation marks omitted). "'[T]he possibility that the averments might fail to state a cause of action on which petitioners could actually

---

[13]*See Kellici v. Gonzales*, 472 F.3d 416, 419–20 (6th Cir. 2006) ("Where a habeas case does not address the final order, it is not covered by the plain language of the [REAL ID] Act."); *see also Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (holding that neither § 1252(a)(5) nor § 1252(b)(9) bars a district court from exercising subject-matter jurisdiction to review an I-130 petition denial because "unrelated to any removal action or proceeding"); *Aguilar*, 510 F.3d at 10–11 (interpreting § 1252(b)(9) "arising under" not to "sweep within its scope claims with only a remote or attenuated connection to the removal of an alien").

[14]*See Singh*, 499 F.3d at 979 ("[A] successful habeas petition in this case will lead to nothing more than 'a day in court' for [the petitioner allowed by § 1252(b)(9)], which is consistent with Congressional intent underlying the REAL ID Act. For these reasons, [the petitioner's] second [ineffective-assistance-of-counsel] claim cannot be construed as seeking judicial review of his final order of removal, notwithstanding his ultimate goal or desire to overturn that final order of removal."); *id.* at 978 (citing cases); *cf. Catholic Soc. Servs., Inc.*, 509 U.S. at 53–56 (construing then-§ 1255a(f)(1) to preclude jurisdiction only over challenges that either refer to or rely on denial of adjustment-of-status applications because the provision relating to judicial review defined its scope to reach only denials); *McNary*, 498 U.S. at 485–94 (construing 8 U.S.C. § 1160(e)'s judicial-review provisions for special agricultural worker status application denials not to preclude general federal-question jurisdiction in the district courts for challenges to the administration of the agricultural worker program because statutory language was not broad enough to encompass such challenges).

recover'" does not defeat a district court's subject-matter jurisdiction, which remains valid so long as "'the right of the petitioners to recover under their complaint will be sustained if the Constitution and the laws of the United States are given one construction and will be defeated if they are given another.'" *Steel Co.*, 523 U.S. at 89 (quoting *Bell v. Hood*, 327 U.S. 678, 682, 685 (1946)). But under the current interpretation of § 1252(b)(9), no federal court has the authority to review the order of removal of the mother Elgharib to determine whether a violation of the child Hamdi's constitutional rights renders the imposition of the mother's removal order invalid or whether the Immigration Court would have decided, in its discretion, not to order Elgharib's removal if it had otherwise entertained the claims now presented by Hamdi.[15] Were we to agree with Hamdi and endorse a different interpretation of § 1252(b)(9) with regard to judicial review of an actual order of removal of an alien, then he would have a claim that could survive a Rule 12(b)(6) motion to dismiss. Because we cannot endorse such an interpretation under current law, *see Kucana*, 130 S. Ct. at 838–39; *AADC*, 525 U.S. at

---

[15]We note that we decide this appeal on the ground that Hamdi has failed to state a claim upon which relief can be granted, rather than on jurisdictional grounds, because it is not the subject matter of Hamdi's complaint that the statute prohibits, but rather the relief that he seeks. *See Primax Recoveries, Inc.*, 433 F.3d at 518–19. In doing so, we are mindful of the Supreme Court's admonishment "to use the term 'jurisdiction' with more precision," *id.* at 518 (citing *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004)), so as "to 'facilitate' clarity by using the term 'jurisdictional' only when it is apposite" as "'prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction)' implicating [the court's adjudicatory] authority," and not as "claim-processing rules," *Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1243–44 (2010) (quoting *Kontrick*, 540 U.S. at 455).

We recognize that Hamdi's claim may appear to present an Article III standing problem based on an inability of a court to grant the relief requested, a potential redressability issue. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) ("[A] plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."). As the Supreme Court has stated, "the fundamental distinction between arguing no cause of action and arguing no Article III redressability, . . . [is] that the former argument is not squarely directed at jurisdiction itself, but rather at the *existence of a remedy* for the alleged violation of federal rights, which issue is not of the jurisdictional sort which the Court raises on its own motion." *Steel Co.*, 523 U.S. at 96 (internal quotation marks and alteration omitted) (emphasis added). Here, the ultimate relief requested, securing cancellation of his mother's order of removal after judicial review, would remedy Hamdi's injury in fact—satisfying Article III standing concerns for redressability—but the court cannot grant the relief requested under current law—implicating failure-to-state-a-claim concerns. *See id.*; *Bell v. Hood*, 327 U.S. 678, 681–84 (1946). "Standing can be established by showing that 'the practical consequence [of the court's order] . . . would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3531.6, at 417 (3d ed. 2008) (quoting *Utah v. Evans*, 536 U.S. 452, 463 (Breyer, J.) (2002)). Unlike the situation where the complainant has merely failed to allege appropriate relief, Hamdi has alleged the proper redressable relief for his injury in fact, but a federal court may not grant such relief under current law. *See Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 65–66 (1978) ("[A] federal court should not dismiss a meritorious constitutional claim because the complaint seeks one remedy rather than another plainly appropriate one.").

482–86; *Elgharib*, 600 F.3d at 600 n.2, 603–04; *Muka*, 559 F.3d at 483–85, we conclude that Hamdi has failed to state a claim upon which relief could be granted.[16] No other relief was pleaded, and we can identify no other available relief that would redress Hamdi's injury in fact without running afoul of current precedent interpreting § 1252(b)(9). Therefore, we hold that Hamdi has failed to state a claim upon which relief can be granted, and the district court did not err in dismissing Hamdi's complaint.

## III. CONCLUSION

We understand Hamdi's plight, and we are not insensitive to the substantial hardship that he may endure if and when his mother is finally removed from this country. However, for the foregoing reasons, we **AFFIRM** the district court's order dismissing Hamdi's complaint with prejudice based on our conclusion that Hamdi failed to state a claim upon which a federal court may grant relief.

---

[16]We express no opinion as to what types of requested relief could avoid § 1252's jurisdictional-bar provisions, and hold only that the relief requested here—the sole relief appropriate to redress Hamdi's injury in fact as presented on appeal—cannot be granted under current law. *See Coleman*, 454 F. Supp. 2d at 765 ("Nor does Section 1252(g) preclude the Court from rendering the removal order void because the statute only prohibits a federal court from 'hear[ing]' alien claims and says nothing about the Court's remedial powers. As a result, [the citizen child] has a cognizable injury that the Court can redress, even if the sought-after relief would have the incidental benefit of nullifying a removal order, and even if the Court would not have jurisdiction to grant that relief if [the parent] had brought a claim in her own right." (citation omitted)); *cf. Deljevic v. Baker*, 463 F. Supp. 2d 699, 703 (E.D. Mich. 2006) ("The petitioner has cited no case, statute, or regulation for the proposition that district courts have the authority to review the validity *vel non* of deportation orders or make pronouncements as to their continuing validity, and this Court has found none.").

---

**CONCURRENCE**

---

JULIA SMITH GIBBONS, Circuit Judge, concurring. Like the majority, I would affirm the dismissal of Hamdi's complaint, but my reasoning differs in some respects from that of the majority opinion. While I fully agree that the jurisdictional bar of 8 U.S.C. § 1252(g) is inapplicable to Hamdi's claims because they are not brought "on behalf of" his mother, I disagree with the majority opinion's analysis with respect to § 1252(a)(5) and 1252(b)(9). Taken together, these sections do indeed create a jurisdictional bar to Hamdi's claims.

Essentially, Hamdi seeks to challenge the order removing his mother from this country. Under § 1252(a)(5) and 1252(b)(9), judicial review of such an order can occur only in the context of a petition for review filed with the appropriate court of appeals. The subsections make no distinction between the individual against whom the order of removal is explicitly directed and a third party in establishing the petition for review as the sole vehicle for such a challenge. Thus, giving § 1252(b)(9) its channeling effect results in the funneling of Hamdi's challenge to the removal order into a petition for review, even though Hamdi was not a party to the immigration proceeding and could not have raised his claim of constitutional violations there.

This result stems from the characterization of Hamdi's claim as a challenge to the removal order and one involving legal issues "arising from" his mother's immigration proceeding. If Hamdi's claims were instead collateral to the removal process, then in my view they could be brought under the APA. As the majority opinion notes, we would have jurisdiction over Hamdi's constitutional and international-law based claims under 28 U.S.C. § 1331. And the APA provides the necessary waiver of sovereign immunity to permit the claims to proceed. Because the claims were indeed collateral, they would not be immigration proceedings in which the INA supplants the APA. Under this analytical route, we would analyze the complaint's individual claims to determine whether a claim on which relief could be granted had been stated. But

because I do not think that Hamdi's claims can be categorized as collateral to the removal process, I will not undertake this analysis.

The majority opinion's view of the substance of Hamdi's claim seems close to mine, but it concludes that the problem lies in the relief sought. Proper conceptualization of this case is not an easy task, but my own view is that, based on § 1252(a)(5) and 1252(b)(9), we lack jurisdiction over Hamdi's claim.