# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
August 6, 2018

Lyle W. Cayce
Clerk

No. 17-60460

STEFANY VEGA DURON, a Minor, and; BRITTANY ELIZABETH VEGA DURON, a Minor, by and Through Their Father and Next Friend; MARTIN DURON ESPARZA, and by and Through Their Next Friends; TROY BROWN; CHRIS BROWN,

Plaintiffs - Appellants

v.

RON JOHNSON, Individually, and in His Official Capacity as Director of the Mississippi Field Office of the United States Immigration and Custom Enforcement Division of the United States Department of Homeland Security; and; DERRICK MCCLUNG, an Immigration Officer of the Mississippi Field Office of the United States Immigration and Custom Enforcement Division of the United States Department of Homeland Security,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Mississippi

Before REAVLEY, GRAVES, and COSTA, Circuit Judges.

REAVLEY, Circuit Judge:

This case tells a story of America's treatment of immigrants but presents to this court only a question of jurisdiction. Children brought suit to halt the deportation of their father—a 20-year resident of this country, married father of five (four of whom are U.S. citizens), taxpayer with no criminal record, and

No. 17-60460

valued member of his Mississippi community. The district court held that it lacked subject-matter jurisdiction and dismissed the suit. We affirm.

I.

Martin Duron Esparza is a citizen of Mexico and resident of Mississippi. In 2011, Martin filed an application for cancellation of removal under 8 U.S.C. § 1229(b)(1), which requires proof of: (1) continuous physical presence for 10 years immediately preceding the date of application; (2) good moral character; (3) lack of certain criminal convictions; and (4) that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. 8 U.S.C. § 1229b(1).

An immigration judge found Martin satisfied the latter three prongs but not the continuous-presence prong. The immigration judge thus denied Martin's application for cancellation of removal and ordered him removed to Mexico. Martin appealed to the Board of Immigration Appeals (BIA), but the BIA dismissed the appeal in 2013.

For several years, United States Immigration and Customs Enforcement (ICE) permitted Martin to remain in the country under an Order of Supervision. In 2017, Martin applied to ICE for a stay of removal. ICE denied Martin's request, and on May 30, 2017, Martin received a formal notice to leave the country by June 1, 2017.

In short order, two of Martin's minor children, Brittany and Stefany, filed suit against certain ICE officials in federal district court, requesting a temporary restraining order enjoining the removal of their father. The children, U.S. citizens, alleged two basic constitutional wrongs: (1) Martin's deportation was arbitrary and violates his children's rights to familial association under the First and Fifth Amendments and (2) selective removal of

2

No. 17-60460

Martin because of his Hispanic origin violates the equal-protection aspect of the Fifth Amendment.

Given Martin's impending removal deadline, the district court worked expeditiously to hold a hearing on May 31, 2017 and issue a same-day order dismissing the lawsuit for lack of subject-matter jurisdiction. This appeal followed.

## II.

Judicial review in the removal context is heavily circumscribed by 8 U.S.C. § 1252, two provisions of which resolve this lawsuit. The first is section 1252(b)(9):

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). Section 1252(b)(9) operates as an "unmistakable 'zipper' clause," *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 483 (1999), designed to "consolidate and channel review of *all* legal and factual questions that arise from the removal of an alien" through the preordained administrative process. *Aguilar v. I.C.E.*, 510 F.3d 1, 9 (1st Cir. 2007). Section 1252(b)(9) does not, however, "sweep within its scope claims with only a remote or attenuated connection to the removal of an alien." *Id.* at 10. Nor does it preclude review of claims that "cannot be raised efficaciously within the administrative proceedings" already available. *Id.* at 10.

The children's familial-association claim raises a legal question squarely within section 1252(b)(9). That is, the claim questions the validity (indeed, the constitutionality) of Martin's deportation: an issue that emanates directly from

Martin's removal order. The very relief the children seek is that the defendants be "enjoined from removing [Martin] from the United States." And, importantly, the children's claim is one that can percolate through the administrative process just fine; courts routinely consider such constitutional claims when they arrive from the BIA on petition for review. *See, e.g.*, *Payne-Barahona v. Gonzáles*, 474 F.3d 1, 2 (1st Cir. 2007) (holding that an alien parent had standing to assert his child's constitutional rights). Therefore, because the familial-association question reached the courts outside the prescribed administrative process, we have no jurisdiction to consider it. 8 U.S.C. § 1252(b)(9).

The children's selective-enforcement claim, though, could not arise in the initial removal proceedings; it concerns instead *how* the Government chooses to enforce already-issued removal orders. To "give some measure of protection to [these] 'no deferred action' decisions and similar discretionary determinations," *AADC*, 525 U.S. at 485, Congress enacted section 1252(g):

> Except as provided in this section and notwithstanding any other provision of law . . . , no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Because selective-enforcement claims like the children's "aris[e] from" a decision to "execute removal orders," section 1252(g) generally bars judicial review of such claims—unless, as the Supreme Court explained, the claim qualifies as the "rare case in which the alleged basis of discrimination is so outrageous that the foregoing considerations [about prosecutorial discretion] can be overcome." 525 U.S. at 491.

But the children say section 1252(g) does not apply to their selective-enforcement claim because it is not brought "by or on behalf of any alien" but rather by U.S. citizens. They point to a Sixth Circuit opinion that

addressed the "by or on behalf of" language and determined that section 1252(g) does not cover "a complaint by a U.S. citizen child who asserts his or her own distinct constitutional rights and separate injury." *Hamdi v. Napolitano*, 620 F.3d 615, 623 (6th Cir. 2010).

Assuming here that *Hamdi*'s rule is correct, we nevertheless conclude the children have not asserted their "own distinct constitutional rights" with respect to the selective-enforcement claim. To be sure, their motion for a temporary restraining order classifies the alleged discriminatory enforcement as violative of "their rights" under the Fifth Amendment. But, when dealing with jurisdictional directives, "we must look through such easy evasions as creative labeling and consider the fundamental nature of the claims asserted." *Aguilar*, 510 F.3d at 17. Fundamentally, the children complain of discrimination against their *father* based on his national origin, and as a consequence, they rely necessarily on their *father's* right to be free from such discrimination. Thus, under *Hamdi*'s rubric, the children brought their selective-enforcement claim "on behalf of" their father. 620 F.3d at 623. Were we to conclude otherwise, removable aliens could evade section 1252(g)'s jurisdictional bar by repackaging their own selective-enforcement claims into the vehicle of a child-plaintiff lawsuit. That would subvert Congress's decision that such claims "not be made the bases for separate rounds of judicial intervention." *AADC*, 525 U.S. at 486.

Because the children's selective-enforcement claim is "on behalf of" an alien, arises from the decision to "execute a removal order," and is not sufficiently "outrageous" to constitute *AADC*'s rare exception, it is subject to section 1252(g)'s jurisdictional bar. *See id.* at 482, 491. The district court was correct to dismiss the children's suit for want of jurisdiction.

AFFIRMED.