[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10987
_____

D.C. Docket No. 1:18-cr-20857-JEM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

RUBERMAN ARDON CHINCHILLA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 11, 2021)

Before WILSON, LAGOA, and HULL, Circuit Judges.

LAGOA, Circuit Judge:

A federal grand jury returned a two-count superseding indictment against Ruberman Ardon Chinchilla, charging him with violating 18 U.S.C § 1546(a) by allegedly using a fraudulent order of supervision to obtain a driver's license from the Florida Department of Highway Safety and Motor Vehicles ("Florida DHSMV"). 18 U.S.C. § 1546(a) criminalizes the knowing use, attempt to use or possession of a forged, counterfeited, altered, fraudulently procured, or unlawfully obtained document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States. This appeal asks us to determine whether an order of supervision constitutes a "document prescribed by statute or regulation . . . as evidence of authorized stay . . . in the United States" under 18 U.S.C. § 1546(a).

Pursuant to 8 C.F.R. §§ 241.13, 241.4, and 241.5, the United States Immigration & Customs Enforcement ("ICE") may issue an order of supervision to aliens unlawfully present in the United States. An order of supervision authorizes an unlawful alien to be released from custody into the community and to remain living in the United States for an indefinite period of time (often many years) pending removal. On its face, an order of supervision states that the alien is "permitted to be at large" subject to the conditions set forth in the order. Orders of supervision may authorize the alien to seek employment in the United States, *see id.* § 241.5(c), and various federal regulations identify orders of supervision as evidence

2

of lawful presence in the United States for purposes of receiving Social Security and federal health care benefits. Additionally, the State of Florida accepts from applicants seeking to obtain a Florida driver's license an order of supervision as proof of legal presence in the United States.

Chinchilla moved to dismiss the superseding indictment for failing to state an offense under § 1546(a), arguing that the term "authorized stay" means "lawful presence" in the United States and that no federal statute or regulation expressly identifies an order of supervision as "evidence of authorized stay in the United States." The district court dismissed the superseding indictment after concluding that an order of supervision does not qualify as a document "prescribed by statute or regulation . . . as evidence of authorized stay . . . in the United States" as required by § 1546(a). After careful review and with the benefit of oral argument, we reverse the district court's order dismissing the superseding indictment and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

To obtain a Florida driver's license, an applicant must provide the Florida DHSMV documents meeting certain federally-mandated minimum issuance standards that verify his identity and legal presence in the United States. *See* 6 C.F.R. § 37.11 (2019) (establishing minimum standards for states to issue driver's licenses and personal identification cards). One of the documents that the Florida

DHSMV accepts as proof of legal presence in the United States is a federal immigration document called an order of supervision. Chinchilla, a native of Honduras, presented a fraudulent order of supervision to the Florida DHSMV on two separate occasions in his attempts to obtain a driver's license. Chinchilla succeeded on his second attempt and was later arrested for using a fraudulent order of supervision in that process.

The grand jury's superseding indictment charged Chinchilla with two counts of violating § 1546(a). Each count of the superseding indictment alleged that Chinchilla "knowingly possess[ed], us[ed], and attempt[ed] to use a document prescribed by statute and regulation as evidence of authorized stay in the United States, that is, a[n] . . . Order of Supervision, knowing it to be forged, counterfeited, altered, and falsely made" in violation of § 1546(a).

Chinchilla moved to dismiss the superseding indictment for failing to state an offense under § 1546(a). In his motion to dismiss, Chinchilla argued that the term "authorized stay" means "lawful presence" in the United States and that no federal statute or regulation expressly identifies an order of supervision as "evidence of authorized stay in the United States." The district court granted Chinchilla's motion and dismissed the superseding indictment. The government moved for reconsideration of the dismissal order, which the district court denied. This timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

4

## II.    STANDARD OF REVIEW

The interpretation of a criminal statute is a legal question we review *de novo*. *United States v. Williams*, 790 F.3d 1240, 1244 (11th Cir. 2015).  A district court's legal conclusions are likewise reviewed *de novo*.  *United States v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996).

## III.    ANALYSIS

18 U.S.C. § 1546(a) states in pertinent part that:

> Whoever knowingly . . . uses, attempts to use, [or] possesses . . . any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, . . . or to have been otherwise procured by fraud or unlawfully obtained . . . [s]hall be fined under this title or imprisoned . . . .

To prevail on a charge under this provision of § 1546(a), the government must prove three elements: (1) the defendant knowingly used, attempted to use, or possessed; (2) a document specified in the provision, or, as is the case here, a document prescribed by statute or regulation as evidence of authorized stay in the United States; and (3) the defendant knew that the document was "forged, counterfeited, altered, or falsely made."  *See United States v. Ryan-Webster*, 353 F.3d 353, 360 n.11 (4th Cir. 2003).  Only the second element is at issue in this appeal—whether an order of supervision is a "document prescribed by statute or regulation . . . as evidence of authorized stay . . . in the United States."  Both the government and

5

Chinchilla agree that there are no express definitions for the terms found in the "other document" clause.

Chinchilla advances two separate arguments in support of the district court's dismissal of the superseding indictment.  First, Chinchilla argues that because an alien subject to an order of supervision necessarily maintains an unlawful immigration status, an order of supervision cannot be evidence of "authorized stay" in the United States.  In support of his argument, Chinchilla contends that the phrase "authorized stay" used in § 1546(a) is defined in the Citizenship and Immigration Service's Adjudicator's Field Manual ("AFM"), which Chinchilla asserts uses the phrases "lawful presence" and "authorized stay" synonymously.  Second, Chinchilla argues that an order of supervision does not fall within § 1546(a)'s "other document" clause because no federal statute or regulation lists or otherwise identifies an order of supervision as "evidence of authorized stay in the United States."

The government agrees that an order of supervision does not confer status or benefits under the federal immigration laws.  The government argues, however, that the language of § 1546(a)'s "other document" clause should be given its plain and ordinary meaning, rather than using technical definitions from the federal immigration laws.  And, according to the government, an order of supervision falls within § 1546(a)'s "other document" clause because an order of supervision permits

an unlawful alien to stay in the United States with the government's conditional permission pending his removal at some indeterminate point in the future.

## A. Section 1546(a)

In 1986, Congress amended § 1546 after the United States Supreme Court in *United States v. Campos-Serrano*, 404 U.S. 293 (1972), narrowly construed the earlier pre-1986 version of the statute, which referred only to "visas[s], permit[s], or other documents[s] required for entry into the United States." In *Campos-Serrano*, the Supreme Court concluded that a counterfeit alien registration card did not fall within the statute's scope because while an alien registration card could be used to reenter the United States, its primary purpose was to "effectuate the registration requirement for all resident aliens," and not to facilitate entry into the United States. *Id.* at 296, 300. As a result, in 1986, Congress abrogated *Campos-Serrano* and amended § 1546(a) by expanding the statute's scope to include other documents in addition to the ones already listed. Specifically, Congress added "alien registration receipt card" and "border crossing card" to the list of specifically named documents. *See* Immigration Reform and Control Act, Pub.L.No. 99-6-3, § 103(a)(2)-(3), 100 Stat. 3359 (1986); *See also*, *Ryan-Webster*, 353 F.3d at 362–63 (explaining Congress's amendment to § 1546(a)). Congress further amended the "other document" clause. First, it replaced the phrase, "other document required for entry into the United States," with the phrase, "other document *prescribed by statute or*

7

*regulation* for entry into" into the United States. (emphasis added) Second, Congress amended the statute by adding to the "other document" clause not just documents for entry into the United States but also a "document prescribed by statute or regulation…*as evidence of authorized stay or employment* in the United States." (emphasis added).

In order to answer the issue before us, we must therefore first determine the meaning of § 1546(a)'s catch-all phrase, "other document prescribed by statute or regulation . . . as evidence of authorized stay . . . in the United States."  The fundamental principle governing any exercise in statutory construction is that "we 'begin [] where all such inquiries must begin: with the language of the statute itself,' and we give effect to the plain terms of the statute."  *In re Valone*, 784 F.3d 1398, 1402 (11th Cir. 2015) (alteration in original) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989)).

Because the terms used in the "other document" clause are not defined in § 1546(a), and because § 1546(a) does not cross-reference or otherwise direct the reader to any other statute for guidance, we look to the plain and ordinary meaning of the statutory language as it was understood at the time the law was enacted.  *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (stating that it is a tenet of statutory construction "that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning"); *CBS Inc. v. PrimeTime 24 Joint*

8

*Venture,* 245 F.3d 1217, 1222 (11th Cir. 2001) ("In the absence of a statutory definition of a term, we look to the common usage of words for their meaning." (quoting *Consolidated Bank, N.A. v. U.S. Dep't of Treasury*, 118 F.3d 1461, 1464 (11th Cir. 1997))); *see United States v. Rahman*, 189 F.3d 88, 119 (2d Cir. 1999) (examining only the plain language when interpreting the "other document" clause in § 1546(a)); Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 69 n.1 (2012) (quoting James Kent, *Commentaries on American Law* 432 (1826), for the proposition that "[t]he words of a statute are to be taken in their natural and ordinary signification and import; and if technical words are used, they are to be taken in a technical sense").

When examining the plain and ordinary meaning of a statute, "one of the ways to figure out that meaning is by looking at dictionaries in existence around the time of enactment." *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1026 (11th Cir. 2016). Looking to dictionaries in existence around the time of enactment, we find that "Prescribe" means "to write or lay down as a rule or direction; to appoint, ordain, direct, enjoin." *Prescribe*, *The Oxford English Dictionary* (2d ed. 1989). "Evidence" means "Ground for belief; testimony or facts tending to prove or disapprove any conclusion." *Evidence*, *The Oxford English Dictionary* (2d ed. 1989). "Authorize" means "to give formal approval to; to sanction, approve, countenance." *Authorize*, *The Oxford English Dictionary* (2d ed.

9

1989).  Finally, a "stay" is "the action or fact of staying or remaining in a place, continued presence; an instance of this, a period of temporary residence, a sojourn."  *Stay*, *The Oxford English Dictionary* (2d ed. 1989).

Given the above ordinary understanding of the words used in the "other documents" clause, we conclude that the terms used in § 1546(a)'s relevant clause—"prescribed by statute or regulation . . . as evidence of authorized stay. . . in the United States"—refer to a document directed by a statute or regulation as proof that its recipient has formal approval to temporarily remain in the United States.  *See, e.g.*, *Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007) (holding that an "advance parole form" is evidence of authorized stay in the United States because it allows an alien to be physically present or "temporarily remain" in the United States despite the alien's unlawful status); *Rahman*, 189 F.3d at 118–19 (stating that § 1546 "covers the possession of any document prescribed—here used as a synonym for 'designated'—by statute or regulation for entry into the United States, knowing it to be forged" and holding that a foreign passport is "a document 'prescribed by statute or regulation for entry into . . . the United States'").  Section 1546(a)'s "other document" clause says nothing about the duration of the authorized stay, nor does it address whether the alien's immigration status must be lawful.

We now turn to the question of whether an order of supervision constitutes a document prescribed by federal statute or regulation "as evidence of authorized stay"

10

in the United States, i.e., as showing proof that the recipient of the document has formal approval to remain in the United States.

## B. Orders of Supervision

For the government to remove[1] an unlawful alien from the United States, an immigration judge must first issue a "final removal order" against the alien. *See generally* 8 C.F.R. § 1241.1 (2019) (discussing when a removal order becomes final). Generally, an alien must be physically removed from the United States within ninety days of a final removal order, 8 U.S.C. § 1231(a)(1)(A), and after a final removal order is issued, ICE may detain the alien until ICE arranges for transportation to the designated country of removal, *see id.* § 1231(a)(2).

For a variety of reasons, however, removal from the United States often cannot be effected within the ninety-day removal period. *See, e.g.*, 8 C.F.R. §§ 241.13, 241.15 (2019). Immigration law provides that, "[i]f the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The statutory language leaves the time period for removal indefinite, i.e., "pending removal." The document prescribed by regulation for

---

[1] Deportation is now described as "removal" in the federal immigration statutes. *Evangelista v. Ashcroft*, 359 F.3d 145, 147 n.1 (2d Cir. 2004).

11

issuance to an alien falling into this category is the "Form I-220B, Order of Supervision." *See* 8 C.F.R. § 241.5 (2019).

An order of supervision does not change an alien's immigration status—he maintains an unlawful immigration status and he remains subject to the final order of removal.  Nonetheless, until he is actually removed from the United States, an alien subject to an order of supervision is released into and resides in the United States for an indefinite—and not necessarily short[2]—period of time as long as he complies with the order's conditions.  *See, e.g.*, *Sihotang v. Sessions*, 900 F.3d 46, 49 (1st Cir. 2018) ("Notwithstanding the expiration of the voluntary departure period, federal authorities allowed the petitioner to remain in the United States under an order of supervision for almost ten years."); *Duron v. Johnson*, 898 F.3d 644, 646 (5th Cir. 2018) ("For several years, United States Immigration and Customs Enforcement (ICE) permitted [Petitioner] to remain in the country under an Order of Supervision.").  Indeed, an order of supervision often is the only document issued by the federal government memorializing the fact that the government is permitting the alien to remain at large in the United States pending removal.  In order to remove an unlawful alien subject to an order of supervision, immigration officials must first

---

[2] As acknowledged by Chinchilla, the process can take decades.

revoke the order of supervision, *see* 8 C.F.R. § 241.4(*l*), and must notify the alien of "the reasons for revocation," *see id.* § 241.13(i)(3).

In order to issue an order of supervision, immigration officials "must conclude" the following:

> (1) Travel documents for the alien are not available or, in the opinion of the Service, *immediate removal, while proper, is otherwise not practicable or not in the public interest*;
>
> (2) The detainee is presently a non-violent person;
>
> (3) The detainee is likely to remain nonviolent if released;
>
> (4) The detainee is not likely to pose a threat to the community following release;
>
> (5) The detainee is not likely to violate the conditions of release; and
>
> (6) The detainee does not pose a significant flight risk if released.

*Id.* § 241.4(e) (emphasis added).  Moreover, "[n]o detainee may be released until sponsorship, housing, or other placement has been found for the detainee, if ordered, including but not limited to, evidence of financial support."  *See id.* § 241.4(j)(2). Immigration officials may "condition release on placement with a close relative who agrees to act as a sponsor . . . or may condition release on the alien's placement or participation in an approved halfway house, mental health project, or community project," if necessary.  *Id.*  Further, immigration officials must consider whether the unlawful alien will "[a]djust to life in a community" as one of the factors for release. *See id.* § 241.4(f)(8)(i).

13

Regarding the conditions of release themselves, an order of supervision "shall specify conditions of supervision including, but not limited to," the following:

(1) A requirement that the alien report to a specified officer periodically and provide relevant information under oath as directed;

(2) A requirement that the alien continue efforts to obtain a travel document and assist the Service in obtaining a travel document;

(3) A requirement that the alien report as directed for a mental or physical examination or examinations as directed by the Service;

(4) A requirement that the alien obtain advance approval of travel beyond previously specified times and distances; and

(5) A requirement that the alien provide DHS with written notice of any change of address in the prescribed manner.

*Id.* § 241.5(a). Additionally, an order of supervision may grant an alien employment authorization, "if the [immigration] officer specifically finds that: (1) [t]he alien cannot be removed in a timely manner; or (2) [t]he removal of the alien is impracticable or contrary to public interest." *See id.* § 241.5(c).[3]

The Form I-220B, Order of Supervision, notifies its recipient and anyone presented with the order that the alien has legal permission to be in the United States pending removal. Specifically, an order of supervision, including Chinchilla's allegedly fraudulent one, states: "Because the [U.S. Department of Homeland

---

[3] Although not briefed by either party, we will presume that an alien legally employed pursuant to an order of supervision is subject to federal withholding taxes, as well as any other state and federal income taxes.

14

Security] has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and *permitted to be at large* under the following conditions." (emphasis added). The order of supervision's identification page contains the alien's name, birthdate, country of citizenship, address, alien number, picture, signature, and fingerprint. It is not hard to imagine that if detained by law enforcement, an unlawful alien subject to an order of supervision would produce the Form I-220B as evidence that he is authorized to remain in the United States despite his unlawful immigration status, and that law enforcement could use the information contained in the order to confirm its validity and the alien's identity. An order of supervision is therefore a document prescribed by 8 C.F.R. § 241.5 that shows legal permission to stay—albeit conditionally—in the United States.

Separately, certain federal entitlement programs specify orders of supervision as evidence of legal permission to remain in the United States. For example, 20 C.F.R. § 416.1618(b) (2019) lists categories of aliens that are considered "permanently residing in the United States under color of law" and, thus, are eligible to apply for supplemental security income ("SSI") benefits. Under the SSI regulations, an alien is considered "to be permanently residing in the United States under color of law . . . if [the] alien [is] residing in the United States with the knowledge and *permission* of the Immigration and Naturalization Service and that

15

agency does not contemplate enforcing [the alien's] departure."[4]  *Id.* § 416.1618(a) (emphasis added).  Of relevance here, the SSI regulations expressly identify an order of supervision as proof that an alien is "permanently residing in the United States under color of law."  *See id.* § 416.1618(b)(12), (c)(1).

Similarly, federal regulations regarding certain federal healthcare benefits, including the premium tax credit, recognize an order of supervision that grants employment authorization as evidence of legal permission to remain in the United States.  *See* 26 C.F.R. § 1.36B-1(g) (2019); 45 C.F.R. § 155.20 (2019).  Under those regulations, anyone who is "lawfully present" in the United States is eligible to apply for certain taxpayer subsidized healthcare benefits.  *See* 26 C.F.R. § 1.36B-1(g); 45 C.F.R. § 155.20.  Both regulations cross-reference 45 C.F.R. § 152.2 for the definition of "lawfully present," which provides that an alien is considered "lawfully present" when the alien has an order of supervision granting employment authorization.  *See* 45 C.F.R. § 152.2(4)(iii) (cross-referencing 8 C.F.R. §274a.12(c)(9), (10), (16), (18), (20), (22), and (24)).

Neither the SSI nor the healthcare benefits regulations discussed above confer legal immigration status upon an alien.  Even so, an alien is eligible to receive

---

[4] Under the regulation, "[t]he Immigration and Naturalization Service does not contemplate enforcing [the alien's] departure if it is the policy or practice of that agency not to enforce the departure of aliens in the same category or if from all the facts and circumstances in [that alien's] case it appears that the Immigration and Naturalization Service is *otherwise permitting you to reside in the United States indefinitely*."  *Id.* § 416.1618(a) (emphasis added).

16

taxpayer funded benefits pending removal because the relevant regulations designate his order of supervision as evidence that he is "permanently residing in the United States under color of law"—the SSI regulations—or "lawfully present"—the healthcare regulations—in the United States for purposes of those federal entitlement programs. The phrases used in these regulations—"permanently residing in the United States under color of law" and "lawfully present"—fall within the ordinary meaning of "authorized stay" used in § 1546(a)'s "other document" clause.

Accordingly, based on a review of the statutes and regulations discussed above, an order of supervision falls within the plain and ordinary meaning of §1546(a)'s "other document" clause. First, the Form I-220B, Order of Supervision, itself is a document prescribed by the federal immigration statutes and regulations as showing that an alien has legal permission to stay in the United States. Separate and apart from the immigration statutes and regulations, an order of supervision is a document prescribed by certain federal entitlement regulations as evidence of legal permission to stay in the United States. The alien's stay in the United States is necessarily temporary, as an order of supervision does not change the alien's unlawful immigration status. And his stay in the United States is necessarily conditional, as it lasts only so long as he complies with the conditions in the order and only so long as the order is not revoked (for whatever reason), resulting in the

17

alien's removal pursuant to the final removal order.  But while it is in effect, an order of supervision allows its holder, among other things, to reside and travel within the United States, possibly obtain legal employment here, and to receive certain federal benefits, i.e., it provides the alien with legal permission to remain (or, in the language of Form I-220B itself, "to be at large") in the United States.

### C. Chinchilla's Proposed Statutory Interpretations Are Not Supported by § 1546(a)'s Language and Structure.

1. "Authorized Stay" as Used in § 1546(a) Is Not Defined by Terms of Art from Immigration Laws Governing Alien Admissibility.

Although Chinchilla agrees that neither § 1546(a) nor other federal criminal statutes define the terms used in the "other document" provision, he argues that we should not base our analysis on the plain and ordinary meaning of § 1546(a), but instead should interpret "authorized stay," as used in § 1546(a), to mean legal status as used in the immigration laws.  Thus, because an alien subject to an order of supervision maintains an unlawful immigration status, Chinchilla contends that the order cannot evidence "authorized stay" in the United States.  In support of his argument, Chinchilla points to section 40.9 of the Citizenship and Immigration Service's Adjudicator's Field Manual ("AFM"), which Chinchilla asserts uses the terms "authorized stay" and "legal status" interchangeably.  Section 40.9 of the AFM, in turn, applies the concept of "unlawful presence" as set forth in §

18

212(a)(9)(B)(ii) of the Immigration and Naturalization Act ("INA"). *See* 8 U.S.C. § 1182(a)(9)(B)(ii). In relevant part, 8 U.S.C. § 1182(a)(9)(B)(ii) provides:

> (B) Aliens unlawfully present
> . . . .
> (ii) Construction of unlawful presence
>
> For purposes of this paragraph, an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General or is present in the United States without being admitted or paroled.

Although the term "authorized stay" in 18 U.S.C. § 1546(a) and the term "stay authorized by the Attorney General" in 8 U.S.C. § 1182(a)(9)(B)(ii) are similar, Chinchilla's arguments fail for several reasons.

As an initial point, the use of similar—or even identical—phrases in different statutes does not mean that the phrases are synonymous. *See, e.g.*, *Yates v. United States*, 574 U.S. 528, 537 (2015) ("In law as in life, . . . the same words, placed in different contexts, sometimes mean different things."). So, the fact that 8 U.S.C. § 1182(a)(9)(B)(ii) uses the expiration of "stay authorized by the Attorney General" to define "unlawful presence" is not, in and of itself, relevant without some textual guidance that "authorized stay" as used in 18 U.S.C. § 1546(a) should be read as a term of art synonymous with legal status. That textual guidance does not exist.

First, as explained in our earlier discussion, the fundamental precept of statutory interpretation is that the language must be given its plain and ordinary meaning unless the statutory text or context requires otherwise. Here, Congress did

19

not define "authorized stay" for purposes of § 1546(a)'s "other document" clause nor did Congress cross-reference or otherwise expressly import definitions or terms of art from the immigration laws into § 1546(a)'s "other document" clause. In contrast, Congress did expressly cross-reference federal immigration statutes in other provisions of § 1546. *See* 18 U.S.C. § 1546(b) (criminalizing use of false identification documents or attestation "for the purpose of satisfying a requirement of section 274A(b) of the" INA). We therefore must presume that Congress deliberatively decided to leave "authorized stay" undefined in § 1546(a), rather than cross-referencing or importing terms of art from the INA. *See, e.g.*, *Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quoting *Nken v. Holder*, 556 U.S. 418, 430 (2009))); *Jama v. ICE*, 543 U.S. 335, 341 (2005) (stating that courts "do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest"). We must respect Congress's decision to leave "authorized stay" to be understood based on its plain and ordinary meaning, rather than as a term of art requiring reference to the INA.

20

Second, the statutory text and structure confirm that "authorized stay" as used in 18 U.S.C. § 1546(a) does not have the same meaning as "stay authorized by the Attorney General" as used in 8 U.S.C. § 1182(a)(9)(B)(ii). In 1986, Congress amended 18 U.S.C. § 1546(a) to expand the statute's scope after the Supreme Court narrowly construed the pre-1986 statutory provision. Congress, however, did not add the "unlawful presence" language to § 1182(a)(9)(B)(ii) until about a decade later as part of the 1996 Illegal Immigration Reform and Immigrant Responsibility Act. Moreover, on its face the definition of "unlawful presence" is confined to § 1182(a)(9)(B)(ii) and is not generally applicable to other parts of the INA itself. *See* 8 U.S.C. § 1182(a)(9)(B)(ii) ("*For purposes of this paragraph*, an alien is deemed to be unlawfully present in the United States if the alien is present in the United States after the expiration of the period of stay authorized by the Attorney General . . ." (emphasis added)).

Additionally, 8 U.S.C. § 1182(a)(9)(B)(ii)'s use of "unlawful presence" plays a narrow, albeit important, role in the immigration laws. As the AFM notes, "unlawful presence" is not synonymous with immigration status. *See* Adjudicator's Field Manual 40.9.2(a)(2). Instead, time accrued for "unlawful presence" pursuant to 8 U.S.C. § 1182(a)(9)(B)(ii) relates to admissibility and is applied only when an alien who has left the United States seeks admission before certain time periods have

21

passed.[5]  *Id.*; *see also Estrada v. Becker*, 917 F.3d 1298, 1305 (11th Cir. 2019) ("Under § 1182(a)(9)(B)(i), aliens who are 'unlawfully present in the United States' for a period of time, leave the United States, then seek admission to the United States before certain periods of time have passed are inadmissible.").  Thus, there is nothing in the express language or the context and structure of 18 U.S.C. § 1546(a) to indicate that Congress intended to import, on an *ex post* basis, a technical meaning from an immigration statute of limited application into a criminal statute broadly prohibiting the fraudulent use of immigration documents.

2. Section 1546(a)'s "Other Document" Provision Does Not Require an Order of Supervision to Be Expressly Listed or Otherwise Identified as Evidencing Authorized Stay in the United States.

Alternatively, Chinchilla urges us to adopt the district court's reasoning in its order of dismissal.  In its order of dismissal, the district court did not address the legal question regarding the meaning of "authorized stay" but instead dismissed the superseding indictment because "the Government has failed to identify any federal statute or regulation prescribing an Order of Supervision as evidence of authorized stay in the United States."  Although the district court did not explain its conclusion in detail, the suggestion is that a federal statute or regulation must expressly list an

---

[5] For example, an alien who has accrued more than 180 days but less than a year of "unlawful presence" must wait three years outside of the United States before seeking admission, while an alien who has accrued more than a year of "unlawful presence" must wait ten years.  8 U.S.C. § 1182(a)(9)(B)(i)–(ii).

order of supervision as evidence of authorized stay in order for it to fall within § 1546(a)'s "other document" provision.  This is incorrect for a number of reasons.

First, the case the district court found persuasive, *United States v. Wei Lin*, 738 F.3d 1082 (9th Cir. 2013), is inapplicable.  In *Wei Lin*, the Ninth Circuit concluded that a driver's license issued by the Northern Mariana Islands did not qualify as a document prescribed by statute or regulation for entry into or evidence of authorized stay in the United States.  *See id.* at 1083.  Unlike a visa, permit, border crossing card, alien registration card, or an order of supervision, a driver's license— even one issued by a federal commonwealth like the Northern Mariana Islands— does not purport to demonstrate that the holder is authorized to enter the United States or that the holder has formal approval to remain within the United States.  *Wei Lin* therefore is irrelevant to the question of whether an order of supervision satisfies § 1546(a)'s "other document" clause.

Second, although not articulated in its order, the district court appeared to interpret "prescribe" to mean that a federal statute or regulation must expressly list or otherwise separately identify an order of supervision as a document evidencing "authorized stay" in the United States in order for it to fall within § 1546(a)'s "other document" clause.  To the extent the district court required an express reference in a federal statute or regulation to a document using § 1546(a)'s language verbatim, this narrow reading of "prescribe" is not dictated by the plain and ordinary meaning

23

of the statutory language, the structure of § 1546(a) itself, or the federal statutes and regulations discussed earlier.

In any event, the immigration statutes and regulations governing the issuance of a Form I-220B, Order of Supervision, confirm that an order of supervision is a document prescribed by statutes and regulations as proof of formal approval for an alien to remain conditionally in the United States. A Form I-220B is a document issued by the government pursuant to 8 U.S.C. § 1231(a)(3) and 8 C.F.R. §§ 241.4, 241.5. On its face, the Form I-220B states that the alien is "permitted to be at large" in the United States subject to its conditions, and it is often the only document issued to an unlawful alien demonstrating that he can live and work in the United States—provided that he complies with the order's conditions and until such time that the order is revoked. Moreover, separate from the immigration laws themselves, other federal regulations expressly designate orders of supervision as proof that an alien is "permanently residing in the United States under color of law" or "lawfully present" in order to receive certain taxpayer-funded benefits. We therefore conclude that the district court erred in its reading of § 1546(a)'s "other document" clause.

## IV.   CONCLUSION

For the foregoing reasons, we reverse the district court's order dismissing the superseding indictment and remand to the district court for further proceedings.

**REVERSED and REMANDED**.

24