[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-12680
Non-Argument Calendar

_____

Agency No. A202-027-757

MARIA JOSE ENRIQUEZ-CORTEZ,
CAMILLA ALEJANDRA HENRIQUEZ-HENRIQUEZ,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(July 16, 2021)

Before WILSON, ROSENBAUM, and LUCK, Circuit Judges.

PER CURIAM:

Maria Jose Henriquez-Cortez[1] and her daughter,[2] natives and citizens of Honduras, petition for review of the Board of Immigration Appeals's decision dismissing Henriquez-Cortez's appeal of the immigration judge's denial of her applications for asylum, withholding of removal, and protection under the Convention Against Torture. First, Henriquez-Cortez argues that defects in her notice to appear deprived the board of jurisdiction over her immigration proceedings. Second, she contends that the board erred by dismissing her appeal of the denial of her applications for relief. Finally, Henriquez-Cortez maintains that the board's "order" of a civil monetary penalty for each day that she fails to depart from the United States violates the Eighth Amendment. After careful review, we deny her petition as to her asylum, withholding of removal, Convention Against Torture, and jurisdictional claims and dismiss her petition as to the Eighth Amendment claim.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On June 30, 2013, as Henriquez-Cortez drove away from her family's home, she was followed by two gang members, Ivan Sarmiento and his son, Ulisses. They quickly stopped her. Upon discovering she was alone, they doubled back to the house where they found her brothers, Alan and Hector. Hector later told Henriquez-

---

[1] Although the parties (at times) refer to the petitioner as Maria Jose "Enriquez-Cortez," the administrative record—including the application for asylum—uses the spelling "Henriquez-Cortez." We will use the spelling from the record.

[2] Because Henriquez-Cortez's daughter hasn't asserted her own claims, her eligibility turns on Henriquez-Cortez's asylum claim. So, we refer to Henriquez-Cortez and her daughter as a single petitioner.

Cortez that he and an unidentified man witnessed the Sarmientos hit Alan over the head with a pistol and kidnap him. Alan later turned up dead—tortured, strangled, and shot. Henriquez-Cortez reported the crime to the police but "when the officials found out who the perpetrators were, they lost interest in the case" and instead "suggested [Henriquez-Cortez] leave the country."

After Alan's death, Henriquez-Cortez went into hiding, first to her in-laws, then to her grandparents' village, and finally to the capital city of Tegucigalpa. She testified that, while in the village and in the capital, she received threats directed at her and her brothers. Henriquez-Cortez said that "[a]fter Alan's burial, our family was called several times by drug dealers . . . threatening to kill us once they found us." After a year, she concluded that nowhere in Honduras would be safe and departed for the United States in June 2014.

Henriquez-Cortez crossed the Mexican border into the United States with her daughter on June 27, 2014. Border Patrol agents detained her the next day and gave her a notice, which did not list a time and date to appear. At an initial hearing, Henriquez-Cortez admitted the allegations in the notice and conceded her removability. She then filed an application requesting asylum, withholding of removal, and protection under the Convention Against Torture.

In her application, Henriquez-Cortez alleged that, in June 2013, the Sarmientos kidnapped and murdered her brother Alan because he "had witnessed a

murder by the men four days prior and they did not want to leave any witnesses."
According to Henriquez-Cortez, the Sarmientos believed that her family knew what
happened to her brother and so they "wanted all of [the family] dead."

Four years after entering the United States, Henriquez-Cortez proceeded to a
hearing on her requests for relief before an immigration judge. She first moved to
dismiss, arguing that—based on Pereira v. Sessions, 138 S. Ct. 2105 (2018)—the
defective notice to appear deprived the immigration judge of jurisdiction. On the
merits, Henriquez-Cortez testified about what happened to her brother, the threats
against her, her relocations inside Honduras, and her fear that "[i]f [she] return[s]
[she] will be killed by the men that killed [her] brother Alan because they consider
[her] and [her] family loose ends."

The immigration judge denied Henriquez-Cortez's motion and rejected each
of her requests for relief. First, the immigration judge determined that the defective
notice to appear didn't strip him of jurisdiction over her petition. Next, while the
immigration judge found Henriquez-Cortez credible, he concluded her testimony
was insufficient to establish her eligibility for any of the relief she sought.

As to asylum, the immigration judge found that Henriquez-Cortez hadn't
suffered any past persecution and rejected her fear of future persecution as not being
objectively reasonable. He noted that Henriquez-Cortez's brother was killed
because he was a witness to a murder, but that she herself didn't witness that murder,

4

or even her brother's murder. And, he continued, Hector, who witnessed Alan's kidnapping, was neither abducted nor killed. This, he inferred, showed that the criminal conduct "was specific to this one family member." The immigration judge also noted that Henriquez-Cortez had remained in Honduras for a year without incident after internally relocating and that four more years had passed since leaving. These facts, he concluded, indicated that Henriquez-Cortez's fear, while genuine, wasn't objectively reasonable.

The immigration judge similarly denied Henriquez-Cortez's request for withholding of removal, reasoning that "there is a heavier burden for withholding," and so, because she had failed to meet the lower asylum standard, she necessarily failed to satisfy the higher threshold for withholding of removal. The immigration judge also denied Henriquez-Cortez's claim for protection under the Convention Against Torture because she only presented testimony about private violence and so hadn't shown that it was more likely than not that a public official would inflict severe pain and suffering.

Henriquez-Cortez timely appealed to the board. The board dismissed her appeal of the immigration judge's decision. It first decided that Henriquez-Cortez had waived any challenge to the immigration judge's decision that she hadn't suffered past persecution. It next concluded that "[r]egardless of the cognizability of [her] proposed social group"—Henriquez-Cortez's family—the evidence didn't

5

support the reasonableness of Henriquez-Cortez's fear of future prosecution. It also found that Henriquez-Cortez's testimony that her brother had been killed to silence a witness showed only that he was "the victim of criminal activity," not that Henriquez-Cortez would be persecuted because of her kinship with him. The board focused on the same facts as the immigration judge: that Henriquez-Cortez had lived in Honduras for a year after her brother's killing without incident and that four years had passed since she left Honduras. It therefore concluded that Henriquez-Cortez hadn't shown her fear of future persecution to be objectively reasonable. The board continued that this failure meant that Henriquez-Cortez's applications for asylum and for withholding of removal were properly denied.

The board also denied Henriquez-Cortez's request for protection under the Convention Against Torture because she hadn't shown that "it was more likely than not that she would be singled out for torture in Honduras by or with the acquiescence (including willful blindness) of a public official[.]" At the bottom of the board's decision, there was a short section entitled "Notice" which said that if Henriquez-Cortez refused to comply with—or tried to evade or obstruct—a final order of removal, the government could impose a civil monetary penalty of up to $799 per day.

**STANDARD OF REVIEW**

We review the board's decision as the agency's final decision, except to the extent it expressly adopts the immigration judge's opinion or reasoning. Perez-Zenteno v. U.S. Att'y Gen., 913 F.3d 1301, 1306 (11th Cir. 2019). We review the agency's conclusions of law de novo and its factual findings under the "substantial evidence test." Adefemi v. Ashcroft, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc). We view the evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. Perez-Zenteno, 913 F.3d at 1306. Even if the record could support multiple conclusions, we "must affirm the agency's decision unless there is no reasonable basis for that decision." Id. (internal quotation marks omitted). We will reverse the board's factual findings "only if the evidence compels a reasonable fact finder to find otherwise." Dos Santos v. U.S. Att'y Gen., 982 F.3d 1315, 1319 (11th Cir. 2020) (internal quotation marks omitted).

**DISCUSSION**

Henriquez-Cortez makes three arguments. First, she argues that the defective notice to appear deprived the agency of jurisdiction over her removal proceedings. Second, as to her asylum, withholding of removal, and Convention Against Torture claims, she contends that the board erred in concluding that her family did not constitute a particular social group and in finding that there was no nexus between

7

her persecution and her status as a member of her family.  And third, she argues the last page of the board's order subjecting her to a $799 per day fine violates the Eighth Amendment.

## *Jurisdiction*

Although Henriquez-Cortez didn't exhaust her jurisdictional argument—that a defect in a notice to appear strips the agency of jurisdiction—by presenting it to the board, we still have jurisdiction to consider it.  After all, if she is right, then the board never had jurisdiction and "the entire proceeding—including the final order of removal—would be invalid, and we would have no jurisdiction to entertain [her] petition." Perez-Sanchez v. U.S. Att'y Gen., 935 F.3d 1148, 1153 (11th Cir. 2019). Because "we always have jurisdiction to consider our jurisdiction," we may consider her argument that this entire proceeding is invalid.  Id.

On the merits, though, the argument is foreclosed by binding precedent. We've already said that a "deficient [notice to appear] [does] not deprive the agency of jurisdiction" over removal proceedings.  Id. at 1150.  Under the prior panel precedent rule, we are bound by Perez-Sanchez and therefore reject Henriquez-Cortez's argument.  Smith v. GTE Corp., 236 F.3d 1292, 1300 (11th Cir. 2001).

## *Asylum*

As to her asylum claim, Henriquez-Cortez argues that the board erred by not considering her family to be a "particular social group." And, she argues, she met

8

her burden to show that she would be persecuted "because of" her family membership.

An applicant for asylum must meet the statutory definition of "refugee." 8 U.S.C. § 1158(b)(1). To do so, an applicant must show that she was (or will be) persecuted because of a protected ground. 8 U.S.C. § 1101(a)(42) (listing protected grounds including race, religion, or membership in a "particular social group"). The protected ground must have been, or will be, "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). This is also known as the "nexus" requirement. Perez-Sanchez, 935 F.3d at 1158.

An applicant must establish that she was persecuted or has a well-founded fear of being persecuted in the future. Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006). To establish a well-founded fear of future persecution, the applicant must show a reasonable possibility of suffering persecution if she returns to her home country. Mejia v. U.S. Att'y Gen., 498 F.3d 1253, 1256 (11th Cir. 2007) (citing 8 C.F.R. § 208.13(b)(2)(i)(B)). A well-founded fear of persecution must be subjectively genuine and objectively reasonable. De Santamaria v. U.S. Att'y Gen., 525 F.3d 999, 1011 (11th Cir. 2008). The subjective component is generally satisfied by the petitioner's credible testimony that she genuinely fears persecution, while the objective prong is established by showing that the petitioner has a good reason to fear future persecution. Id.

9

Whether a petitioner's fear of future persecution is well-founded is a mixed question of fact and law. Zhou Hua Zhu v. U.S. Att'y Gen., 703 F.3d 1303, 1308 (11th Cir. 2013). In other words, the facts underlying the claim—whether an event happened, whether a future event is likely to occur—are factual findings which we review under the "substantial evidence" standard. Id. Whether those undisputed or adjudicated facts give rise to a well-founded fear is a legal conclusion which we review de novo. Id. at 1312. On the other hand, whether persecution is "because of" a protected ground is a question of fact. Sanchez-Castro v. U.S. Att'y Gen., 998 F.3d 1281, 1286 (11th Cir. 2021).

While Henriquez-Cortez argues that the board erred in holding that her family was not a particular social group, she misreads the board's decision. The board assumed without deciding that her family constituted a particular social group. So will we. See Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1288 (11th Cir. 2003) ("Even assuming arguendo that Mendoza's status . . . places him in a protected social group, he has failed to show past persecution on that ground.").

Henriquez-Cortez does not challenge the board's conclusion that her fear was not well-founded. This is a required element of an asylum claim and was one of the reasons the board gave for dismissing her appeal. Ruiz, 440 F.3d at 1258. When an appellant fails to challenge all of the independent grounds supporting a decision, we must affirm the decision below, or here, deny a petition for review. See Sapuppo v.

10

Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) (explaining that an appealed decision will be affirmed where the appellant does not properly challenge all of the grounds on which the decision is based).

*Withholding of Removal*

As to Henriquez-Cortez's request for withholding of removal, she must prove that it is "more likely than not" that she would be persecuted if returned to Honduras. Sanchez-Castro, 998 F.3d at 1286. Withholding of removal has a higher burden of proof than asylum. Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352 (11th Cir. 2009). Thus, "[w]here an applicant is unable to meet the 'well-founded fear' standard of asylum, [s]he is generally precluded from qualifying for either asylum or withholding of removal." Kazemzadeh, 577 F.3d at 1352. Because Henriquez-Cortez has not met her burden for asylum, she has not met the higher burden of withholding of removal.

*Convention Against Torture*

As to her claim under the Convention Against Torture, Henriquez-Cortez contends that, by discrediting her claim that she would be harmed in Honduras, the board was effectively "requiring [her] [to] present evidence of past persecution in order to prove future persecution." But the board did no such thing. The board simply concluded that, while the immigration judge found Henriquez-Cortez credible, her testimony didn't support her evaluation of her own likelihood of

11

persecution. That the board didn't find Henriquez-Cortez's (subjectively-genuine) fear objectively reasonable doesn't mean that she was required to present evidence of past persecution. It just means that the board concluded, based on the evidence, that Henriquez-Cortez didn't meet the statutorily-required threshold.

*Civil Penalty*

Lastly, we dismiss Henriquez-Cortez's Eighth Amendment claim because it isn't yet ripe. Cheffer v. Reno, 55 F.3d 1517 (11th Cir. 1995). We've previously said that "challenges under the Excessive Fines Clause are [] generally not ripe until the actual, or impending, imposition of the challenged fine." Id. at 1523. In Cheffer, we declined to decide whether a fine violated the Eighth Amendment because "we [could not] determine from the face of the Act what penalties will actually be imposed." Id. Without any specific facts, we said, "we cannot decide whether a specific fine will be excessive or punishment so cruel and unusual as to violate the Eighth Amendment." Id.

Here, the board told Henriquez-Cortez that if several separate conditions were satisfied, then she would be subject to a civil monetary fine. First, she must be subject to a final order of removal. Second, the government must move to enforce that order—i.e., actually deport her. United States v. Chinchilla, 987 F.3d 1303, 1309–10 (11th Cir. 2021). While this is supposed to happen within ninety days, 8 U.S.C. § 1231(a)(1)(A), it can take longer, sometimes even "decades," Chinchilla,

987 F.3d at 1310 n.2. Third, Henriquez-Cortez must "willfully fail[] or refuse[] to depart from the United States . . . [or] to make timely application in good faith for travel or other documents necessary to depart the United States . . . or to present [herself] at the time and place required for removal by [the Department of Homeland Security]." Only then, if Henriquez-Cortez is ordered to be removed, the government seeks to execute that order, and Henriquez-Cortez absconds, could she potentially be subject to a penalty of some amount "up to" $799 for each day she refuses to depart.

While it is true that Henriquez-Cortez is now subject to a final order of removal, there is no indication that the government will seek to execute that order instead of placing her under an order of supervision, which would allow her to live in the United States indefinitely. Id. at 1311. See also Immigration and Customs Enforcement, Policy No. 11090.1, Interim Guidance: Civil Immigration Enforcement and Removal Priorities (as amended May 27, 2021) (directing agents to prioritize cases involving (1) threats to national security, (2) arrival after November 1, 2020, and (3) threats to public safety); Immigration and Customs Enforcement, Case Review Process (Mar. 5, 2021) (describing how a new "process offers another channel through which noncitizens and their representatives can request that ICE exercise its prosecutorial discretion on a particular noncitizen's behalf"). In other words, until the government actually seeks to enforce the order,

13

Henriquez-Cortez actually skips town, and the government actually imposes a fine, we cannot say whether the total fine is cruel and unusual or excessive. Actual enforcement is necessary because without critical facts like the amount per day (which could be anywhere "up to" almost eight hundred dollars) and the number of days Henriquez-Cortez refuses to depart, we can't know the full amount of the fine. Any analysis we might do today of whether this future fine is excessive would be entirely speculative.

To be sure, in Cheffer, we noted that prohibiting pre-enforcement challenges might cause a litigant to be forced to "choose between foregoing lawful activity and risking substantial legal sanctions" but that issue isn't present here. Cheffer, 55 F.3d at 1524. Henriquez-Cortez hasn't said that she will have to forgo lawful activity. She just says that the fine is excessive. The claim is not ripe.

## CONCLUSION

We deny Henriquez-Cortez's petition because our prior precedent forecloses her jurisdictional challenge, and she did not challenge the board's conclusion that her fear of future persecution was not objectively reasonable. We dismiss Henriquez-Cortez's Eighth Amendment challenge as unripe because it involves a fine of an unknown amount that may never be imposed.

**PETITION DENIED IN PART AND DISMISSED IN PART.**

14