[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-14095

_____

NAKIA COURTNEY HAMILTON,

                                                    Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

                                                    Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A060-601-517

_____

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

In 2017, an order of removal was entered for Petitioner Nakia Courtney Hamilton, a citizen of Jamaica, following a conviction for aggravated battery with a deadly weapon. Over the past several years, Hamilton has filed three motions to reopen his removal proceedings to avoid his deportation. In his most-recent motion, Hamilton asked the Board of Immigration Appeals ("BIA") to reopen the proceedings so he could apply for a waiver of the immigration consequences of his conviction pursuant to 8 U.S.C. § 1182(h). But a removable alien is generally allowed to file only one motion to reopen and must do so within ninety days of the removal order. *See* 8 U.S.C. § 1229a(c)(7)(A), (C)(i). The BIA denied Hamilton's third motion to reopen, finding it to be untimely and procedurally barred.

Both before the BIA and in this petition, Hamilton asserts that those procedural limitations should be equitably tolled in light of the Supreme Court's intervening decision in *Niz-Chavez v. Garland*, 593 U.S. 155 (2021). The BIA rejected that argument, concluding that *Niz-Chavez* had no bearing on Hamilton's entitlement to a § 1182(h) waiver and thus provided no basis for reopening the proceedings.

Hamilton now argues that the BIA abused its discretion in finding that *Niz-Chavez* did not justify equitable tolling and that the BIA failed to give reasoned consideration to his arguments to the

contrary.  After careful review and with the benefit of oral argument, we conclude that the BIA afforded Hamilton's motion reasoned consideration and that it properly exercised its discretion in denying the motion as procedurally barred.  We therefore deny the petition.

## I.    BACKGROUND

Nakia Courtney Hamilton is a native and citizen of Jamaica. Hamilton was admitted to the United States as a lawful permanent resident on July 11, 2009.  In November 2014, Hamilton was convicted of aggravated battery with a deadly weapon, in violation of Fla. Stat. § 784.045(1)(A)(2), and was sentenced to two days of imprisonment and two years of probation.

On February 12, 2015, the Department of Homeland Security ("DHS") served Hamilton with a notice to appear ("NTA") charging him with removability pursuant to 8 U.S.C. § 1227(a)(2)(A)(i).  Under that provision, a noncitizen convicted of a "crime involving moral turpitude" committed within five years after admission to the United States is deemed "deportable" and subject to removal. 8 U.S.C. § 1227(a)(2)(A)(i); *see also Sosa-Martinez v. U.S. Att'y Gen.*, 420 F.3d 1338, 1342 (11th Cir. 2005) (concluding Florida aggravated battery is a crime involving moral turpitude). DHS filed the NTA with the immigration court that same day.  Although the NTA did not include the date, time, or location of the initial hearing, the Executive Office for Immigration Review later sent Hamilton a supplemental notice of hearing providing that information.  Hamilton first appeared before an immigration judge

4                    Opinion of the Court                    23-14095

in March 2015.  At this hearing, Hamilton admitted his alienage, date of admission, and conviction for aggravated battery.  The immigration judge sustained the charge of removability.

Over two years later, in May 2017, Hamilton requested an opportunity to file an application for relief with the immigration court, and the immigration judge ordered him to submit any application by August 2, 2017.  In the interim, Hamilton married a United States citizen, Sheena Lee Adams.  Ultimately, Hamilton did not submit his application by August 2, leading the immigration judge to conclude that Hamilton had "abandoned any and all claims for relief."  The immigration judge ordered that Hamilton be removed to Jamaica.  Hamilton did not appeal that decision.

On August 6, Adams filed an I-130 petition on Hamilton's behalf.[1]  Five days later, Hamilton filed his first motion to reopen removal proceedings, stating that he was now married to a United States citizen and that he intended to submit an I-485 application for adjustment of status.[2]  Hamilton did not attach any applications

---

[1] 8 U.S.C. § 1154(a)(1)(A)(i) provides that "any citizen of the United States claiming that an alien is entitled to . . . an immediate relative status . . . may file a petition with the Attorney General for such classification."  The I-130 form serves as the referenced petition.

[2] 8 U.S.C. § 1255(a) provides that the Attorney General can adjust the status of an alien to that of a lawful permanent resident "if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is

for relief or protection from removal to his motion, and DHS opposed the motion. The immigration judge denied Hamilton's first motion to reopen on the grounds that Hamilton had failed to file his application with the motion and had not shown *prima facie* eligibility for relief.

In September 2017, Hamilton filed a second motion to reopen, now arguing that he could become eligible to adjust his status based on his wife's I-130 petition. Hamilton attached an asylum application and a copy of Adams's pending I-130 petition to the motion. In his asylum application, Hamilton claimed that he had been politically active when he was a student and had protested corruption and "the politically motivated killings of the government," and that he feared he would be targeted by police because of his protest activity. DHS opposed his second motion to reopen.

The immigration judge denied this motion as well. Because the Immigration and Nationality Act (the "INA") generally limits the number of motions to reopen an alien can file to one, *see* 8 U.S.C. § 1229a(c)(7)(A), the immigration judge concluded that Hamilton's second motion to reopen was numerically barred. The immigration judge also explained that, even if Hamilton's motion were not procedurally barred, Hamilton did not establish *prima facie* eligibility to adjust his status because he failed to show that he was unlikely to become a public charge. *See* 8 U.S.C. § 1182(a)(4)

---

filed." The I-485 form serves as a petition for the adjustment of status pursuant to that subsection.

(stating that an alien who is "likely at any time to become a public charge is inadmissible"). Hamilton appealed that decision to the BIA, which affirmed the immigration judge's order without an opinion.

Meanwhile, Adams's I-130 petition was approved in August 2019. The following October, Hamilton petitioned this Court for review of the BIA's order denying his second motion to reopen. In his petition, Hamilton argued that, because "his NTA did not include the time or place for his hearing as specified in 8 U.S.C. § 1229(a), . . . removal proceedings were never validly initiated against him, and that the [immigration judge] therefore had no jurisdiction to conduct such proceedings." *Hamilton v. U.S. Att'y Gen.* (*Hamilton I*), 806 F. App'x 817, 818 (11th Cir. 2020).

This argument was based on the Supreme Court's then-recent decision in *Pereira v. Sessions*, 585 U.S. 198 (2018), which articulated the relationship between a defective NTA and an alien's eligibility for cancellation of removal under 8 U.S.C. § 1229b. To qualify for cancellation, the alien "must have 'been physically present in the United States for a continuous period of not less than 10 years immediately preceding'" his application, *Pereira*, 585 U.S. at 202 (quoting 8 U.S.C § 1229b(b)(1)(A)), but "any period of . . . continuous physical presence in the United States shall be deemed to end . . . when the alien is served a notice to appear under [8 U.S.C. § 1229(a)]," *id.* (quoting 8 U.S.C § 1229b(d)(1)(A)). Taking these provisions together, the *Pereira* Court "held that an NTA does not meet the criteria of § 1229(a), and does not trigger the stop-time

rule [for cancellation-of-removal purposes under § 1229b], if the NTA fails to include the time and place of the noncitizen's removal proceedings." *Hamilton I*, 806 F. App'x at 818 (citing *Pereira*, 585 U.S. at 207–10).

Building off that rule, Hamilton's first petition argued that a defective NTA must also deprive the immigration court of subject-matter jurisdiction because federal regulations prescribe that jurisdiction vests upon the filing of an NTA. We rejected that argument, finding it to be foreclosed by our decision in *Perez-Sanchez v. U.S. Attorney General*, 935 F.3d 1148 (11th Cir. 2019). There, "we stated that 'the regulation and the statute' governing 'the service or filing of an NTA' set forth 'only claim-processing rules,' not jurisdictional rules." *Hamilton I*, 806 F. App'x at 818 (quoting *Perez-Sanchez*, 935 F.3d at 1153). Therefore, we held that "the 'IJ and the BIA properly exercised jurisdiction' over the removal proceedings" and denied Hamilton's petition. *Id.* (quoting *Perez-Sanchez*, 935 F.3d at 1157).

Hamilton filed a third motion to reopen proceedings in August 2021. In this most-recent motion, Hamilton maintains that his proceedings should be reopened so he can pursue an I-485 application to register as a lawful permanent resident and seek a waiver of his criminal classification under 8 U.S.C. § 1182(h). Section 1182(h) grants the Attorney General discretion to waive the immigration consequences of a criminal conviction, provided that the alien has not "been convicted of an aggravated felony" since his admission to the United States and has "lawfully resided continuously in the

United States for a period of not less than 7 years immediately preceding the date of *initiation of proceedings* to remove the alien from the United States."  8 U.S.C. § 1182(h) (emphasis added).

Hamilton admitted that his third motion to reopen was untimely but argued that the deadline for his motion should be equitably tolled in light of the Supreme Court's intervening decision in *Niz-Chavez v. Garland*, 593 U.S. 155 (2021).  In *Niz-Chavez*, the Supreme Court extended *Pereira* to hold that § 1229b(d)(1)(A)'s stop-time rule does not take effect unless the alien receives a single document containing all the information specified in § 1229(a)(1), and that the Government may not cure a defective NTA by providing only the time and date of the hearing in a supplemental notice.  *See Niz-Chavez*, 593 U.S. at 160–69.  According to Hamilton, since he never received a compliant NTA, proceedings were never validly "initiated" against him and § 1182(h)'s stop-time rule was never triggered—meaning that he now meets the seven-year continuous-residency requirement for a § 1182(h) waiver.  In turn, Hamilton asserted that the new rule announced in *Niz-Chavez* represented an "extraordinary circumstance" that justifies the equitable tolling of the timing and numerical limitations for filing a motion to reopen.

The BIA disagreed, concluding that Hamilton's third motion to reopen remained "untimely and number barred."  The BIA rejected Hamilton's reliance on *Niz-Chavez*, finding that its interpretation of "the stop-time rule for purposes of continuous residence . . . required for cancellation of removal [under § 1229b] does not govern continuous lawful residence required for a [waiver under §

1182(h)]." Thus, because *Niz-Chavez* "does not affect [Hamilton's] eligibility for a [§ 1182(h) waiver]," the BIA held that *Niz-Chavez* also "does not provide a basis for equitable tolling of the motion to reopen time and number limitations." On December 19, 2023, Hamilton filed his petition for review of that order.

## II.    STANDARD OF REVIEW

We review the denial of a motion to reopen for an abuse of discretion. *Flores-Panameno v. U.S. Att'y Gen.*, 913 F.3d 1036, 1040 (11th Cir. 2019). All legal conclusions underlying the BIA's decision, as well as the question of whether the BIA afforded a motion reasoned consideration, are reviewed *de novo*. *See Li v. U.S. Att'y Gen.*, 488 F.3d 1371, 1374 (11th Cir. 2007); *Ali v. U.S. Att'y Gen.*, 931 F.3d 1327, 1333 (11th Cir. 2019).

## III.    ANALYSIS

In his petition, Hamilton argues that the BIA abused its discretion by denying his third motion to reopen as time- and number-barred, and that the BIA failed to afford his motion reasoned consideration. We consider each argument in turn.

### A.

We begin with the BIA's determination that Hamilton's third motion to reopen was procedurally barred. Motions to reopen "are disfavored, especially in a removal proceeding," since, "'as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.'" *Abdi v. U.S. Att'y Gen.*, 430 F.3d 1148, 1149 (11th Cir. 2005) (quoting *INS v.*

*Doherty*, 502 U.S. 314, 323 (1992)).  Accordingly, the BIA retains broad discretion to deny such motions.  We have recognized several appropriate grounds for denial of a motion to reopen, including the alien's "failure to establish a prima facie case[,]" the "failure to introduce evidence that was material and previously unavailable," *Najjar v. Ashcroft*, 257 F.3d 1262, 1302 (11th Cir. 2001), *overruled on other grounds by Patel v. U.S. Att'y Gen.*, 971 F.3d 1258 (11th Cir. 2020) (citing *Doherty*, 502 U.S. at 323), and the alien's failure to comply with the INA's procedural requirements, *see Bing Quan Lin v. U.S. Att'y Gen.*, 881 F.3d 860, 873 (11th Cir. 2018).  And even if the alien can establish his "statutory eligibility for relief," the BIA can still deny a motion to reopen if it believes the alien "is not entitled to a favorable exercise of discretion."  *Najjar*, 257 F.3d at 1302.

Here, the BIA found that Hamilton's third motion was both untimely and numerically barred.  In general, a removable alien "may file one, and only one[,] motion for reopening of an order of removal," "within 90 days of the removal order's entry."  *Bing Quan Lin*, 881 F.3d at 872.  These requirements, however, are subject to equitable tolling, provided that the alien can "show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'"  *Avila-Santoyo v. U.S. Att'y Gen.*, 713 F.3d 1357, 1363 n.5 (11th Cir. 2013) (en banc) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

Hamilton argues that the BIA should have excused his successive filings in light of the intervening decision in *Niz-Chavez*.  In his view, he now meets the seven-year continuous-residency

requirement for a § 1182(h) waiver because, under *Niz-Chavez*, his noncompliant NTA was insufficient to stop the clock on his accrual of time as a lawful resident. Moreover, he contends that the rule announced in *Niz-Chavez* presents an "extraordinary circumstance" justifying equitable tolling because he "could not have presented evidence nor made arguments based on *Niz-Chavez*" within the prescribed period for filing a motion to reopen. As such, Hamilton's petition rises and falls on the question of whether *Niz-Chavez* requires us to find that a defective NTA is insufficient to trigger § 1182(h)'s stop-time rule. We conclude that it does not.

As the BIA correctly observed, the stop-time provisions of § 1229b(d)(1)(A)—the section at issue in *Niz-Chavez*—and § 1182(h) are not the same.[3] Section 1229b(d)(1)(A)'s stop-time rule is explicitly triggered "when the alien is served *a notice to appear* under section 1229(a)." 8 U.S.C. § 1229b(d)(1)(A) (emphasis added). By contrast, § 1182(h)'s stop-time rule takes effect on "the date of initiation of proceedings to remove the alien from the United States." *Id.* § 1182(h). Axiomatic in statutory interpretation is the principle that "a material variation in terms suggests a variation in meaning." A. Scalia & B.A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012); *see Georgia v. Meadows*, 88 F.4th 1331, 1339 (11th

---

[3] The BIA explicitly recognized that Hamilton is ineligible for cancellation of removal under § 1229b because of his criminal conviction. *See* 8 U.S.C. § 1229b(d)(2).

Cir. 2023).  And here, the textual variations between the two sections are indeed material.

Unlike § 1229b(d)(1)(A), § 1182(h) makes no explicit reference to "a notice to appear" or 1229(a)'s requirements for what information must be included therein.  But such language was indispensable to the Court's decisions in *Pereira* and *Niz-Chavez*.  For instance, the *Pereira* Court's textual analysis turned on its reasoning that "[b]y expressly referencing § 1229(a), the statute . . . is clear that to trigger the stop-time rule, the Government must serve a notice to appear that, at the very least, 'specif[ies]' the 'time and place' of the removal proceedings." *Pereira*, 585 U.S. at 209 (quoting 8 U.S.C. § 1229(a)(1)(G)(i)).  And *Niz-Chavez*'s holding that, to comply with § 1229(a), an NTA must be "a *single* document containing all the information an individual needs to know about his removal hearing," 593 U.S. at 158 (emphasis added), was largely based on the fact that "Congress placed the singular article '*a*' outside the defined term in § 1229(a)(1)," *id.* at 161 (emphases added).  Those cases' understanding of § 1229b(d)(1)(A)'s stop-time rule is inextricably tethered to that provision's specific text. *See Niz-Chavez*, 593 U.S. at 172 ("At one level, today's dispute may seem semantic, focused on a single word, a small one at that.").  But such references to "a notice to appear" or § 1229(a) are fully absent from § 1182(h).

According to Hamilton, we should nonetheless read "initiation of proceedings" in § 1182(h) to mean "the issuance of an NTA in compliance with [§ 1229(a)]," because § 1229 is "titled 'Initiation of Removal Proceedings' and governs how [DHS] begins removal

proceedings through the issuance on an NTA." This argument proves too much.

Although section headings may be "permissible indicators of meaning," Scalia & Garner, *supra*, at 221, they "can do no more than indicate the provisions in a most general manner," *Brotherhhood of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 528 (1947). Beyond describing what is to be included in an NTA, § 1229 also contains various rules related to other pre-hearing procedures, including the alien's opportunity to secure counsel, service by mail, and the timeframe for beginning removal proceedings. *See* 8 U.S.C. § 1229(b)–(d). Hamilton does not argue—and neither law nor logic suggests—that proceedings could not be "initiated" if any of the other procedures enumerated in § 1229 are not followed. Since nothing in § 1229 requires that removal proceedings can only be "initiated" by issuing a compliant NTA, the title of the section is best read as outlining the general procedure for initiating a removal action, rather than resolutely defining that point or commanding that no proceedings are ever initiated unless each requirement is met.

Where, as here, a statute does not define a term, we "look to the common usage" of the word at the time of the statute's enactment to determine its ordinary meaning. *United States v. Hall*, 64 F.4th 1200, 1205 (11th Cir. 2023); *see* Scalia & Garner, *supra*, at 78 ("Words must be given the meaning they had when the text was adopted."). In doing so, we may consult "dictionaries in existence around the time of enactment." *Paresky v. United States*, 995 F.3d

1281, 1285 (11th Cir. 2021) (quoting *United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021)).  In 1996, the same year in which Congress amended the INA to trigger § 1182(h)'s stop-time rule upon "the date of initiation of proceedings," *see* Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 348, 110 Stat. 3009, 3009-639 (1996), the *American Heritage Dictionary of the English Language* defined "initiation" to mean "[t]he act or an instance of initiating," *Initiation*, *American Heritage Dictionary of the English Language* (3d ed. 1996).  And "initiate" was defined as "[t]o set going by taking the first step; begin." *Initiate*, *American Heritage Dictionary*, *supra*.  Other contemporary dictionaries provide similar definitions for "initiation" and "initiate."  *See Initiation*, *Webster's New World College Dictionary* (3d ed. 1997) ("an initiating"); *Initiate*, *Webster's New World College Dictionary*, *supra* ("to bring into practice or use; introduce by first doing or using; start"); *Initiation*, *Merriam-Webster Collegiate Dictionary* (10th ed. 1993) ("the act or an instance of initiating"); *Initiate*, *Merriam-Webster Collegiate Dictionary*, *supra* ("to cause or facilitate the beginning of[;] set going").  Based on these definitions, we fail to see how anyone could reasonably say that Hamilton's removal proceedings—which have now included three motions to reopen and two appeals to this Court—were never initiated, even if the NTA was noncompliant.  Instructive here is the Supreme Court's recent decision in *Campos-Chaves v. Garland*, 602 U.S. 447 (2024), a post-*Niz-Chavez* case.  There, the Court was asked to interpret § 1229a(b)(5)(C)(ii), another part of the INA prescribing that an alien may have his removal order rescinded if he "did not receive notice in accordance with paragraph

(1) or (2) of section 1229(a)." 8 U.S.C. § 1229a(b)(5)(C)(ii). After being convicted of a removable offense, each of the three petitioners received an initial notice that did not include the date or time for a hearing, followed by a subsequent notice providing that information. *See Campos-Chavez*, 602 U.S. at 452–56. The petitioners argued they could "'demonstrat[e]' that they 'did not receive notice in accordance with paragraph (1) or (2) of section 1229(a)'" because they did not receive a compliant NTA under § 1229(a)(1).[4] *Id.* at 456 (alteration in original) (quoting 8 U.S.C. § 1229a(b)(5)(C)(ii)). The Court rejected that argument, finding that § 1229a(b)(5)(C)(ii)'s use of the disjunctive meant that an alien was not entitled to rescission if the Government provided him notice under either § 1229(a)(1) or §1229(a)(2). *Id.* at 460 ("Whether that notice was issued under paragraph (1) as an NTA or under paragraph (2), it is that notice which the Government must prove was provided to remove an alien in absentia."). Accordingly, the Court affirmed the petitioners' removal orders. *Id.* at 465.

---

[4] *See Campos-Chaves*, 602 U.S. at 451 ("First, under paragraph (1) of § 1229(a), the alien 'shall be given' a 'notice to appear,' or NTA. The NTA must set out, among other things, '[t]he nature of the proceedings against the alien,' '[t]he legal authority under which the proceedings are conducted,' '[t]he time and place at which the proceedings will be held,' and the consequences of failing to appear. . . . Second, under paragraph (2), 'in the case of any change or postponement in the time and place of such proceedings,' the agency must provide 'a written notice' specifying 'the new time or place of the proceedings' and 'the consequences' of failing to attend." (quoting 8 U.S.C. § 1229(a)(1)–(2))).

*Campos-Chavez* presents an instance where, despite never receiving an NTA compliant with § 1229(a), the petitioners were validly ordered to be removed by an immigration judge—an order that was upheld by the BIA and Supreme Court. To say that removal proceedings were never "initiated" against them—*i.e.*, that the proceedings did not "begin," *Initiate*, American Heritage Dictionary, *supra*—would give that word a meaning it "cannot bear," *see* Scalia & Garner, *supra*, at 218. Because removal proceedings *ended* with a valid removal order, they necessarily must have *begun* at some point as well—irrespective of whether the alien received an NTA compliant with § 1229(a).

So too here. Only if we ignore § 1182(h)'s plain language—and the fact that this case is currently before us—could we say that Hamilton's removal proceedings never began.[5] Regardless of what was included in Hamilton's NTA, DHS "initiated" removal proceedings against Hamilton on February 12, 2015, thus triggering § 1182(h)'s stop-time provision.

Resisting this conclusion, Hamilton cites to our opinion in *Quinchia v. U.S. Attorney General*, 552 F.3d 1255 (11th Cir. 2008), in

---

[5] *Cf. Fish v. Ogdensburgh & L.C.R. Co.*, 79 F. 131, 131 (C.C.N.D.N.Y. 1897) ("That its jurisdiction must be invoked in the end is undisputed; that it may be invoked in the beginning would seem to follow as a logical conclusion."); *see also* Aristotle, *Poetics* bk. VII, at 1450b (S.H. Butcher ed., S.H. Butcher trans., 1st ed. 1895) ("A beginning is that which does not itself follow anything by causal necessity, but after which something naturally is or comes to be. An end, on the contrary, is that which itself naturally follows some other thing, either by necessity, or in the regular course of events, but has nothing following it.").

which this Court explained in dicta that § 1182(h) "states that the Attorney General may, in his discretion, waive removal under certain circumstances, but may not waive removal for an alien who has not 'lawfully resided continuously' in the United States for seven years prior to *being served with a Notice to Appear*." 552 F.3d at 1257 (emphasis added) (quoting 8 U.S.C. § 1182(h)). The clause in which the Court paraphrases § 1182(h) to equate serving an NTA with initiating proceedings, however, has nothing to do with the question at issue in *Quinchia*—*i.e.*, whether the phrase "lawfully resided continuously" was ambiguous and thus entitled to *Chevron* deference. *Id.* at 1259. Because *Quinchia*'s paraphrase of that portion of § 1182(h) "'neither constitutes the holding of a case, nor arises from a part of the opinion that is necessary to the holding of the case,'" it is, at most, merely nonbinding dicta. *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019) (quoting *Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004)). And since Hamilton gives no valid reason otherwise supporting his understanding that the "initiation of proceedings" takes place—and thus § 1182(h)'s stop-time rule is triggered—only upon the issuance of a valid NTA, we can reject that reading here.

In the alternative, Hamilton argues that "'initiation of proceedings' refers to the point at which the government *files* the NTA with the immigration court." Federal regulations provide that "[j]urisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the [U.S. Citizenship and Immigration] Service." 8 C.F.R. § 1003.14(a); *see also id.* § 1003.13 ("Charging document

means the written instrument which initiates a proceeding before an Immigration Judge. . . . [T]hese documents include a Notice to Appear, a Notice of Referral to Immigration Judge, and a Notice of Intention to Rescind and Request for Hearing by Alien."). Repurposing his previous argument, Hamilton says that filing an NTA that complies with the requirements of § 1229(a) is necessary to "commence removal proceedings in order to stop the accrual of lawful residency." Again, we disagree.

Hamilton conflates what must be included in an NTA issued to the alien—the information listed in § 1229(a)—with what must be included in the NTA filed with the immigration court—which is instead described in 8 C.F.R. § 1003.15. Under that regulation, which outlines the "[c]ontents of the Notice to Appear for removal proceedings" filed with the Immigration Court, the Government is not required to include the date or time of the removal hearing in the NTA filed with the court. *See* 8 C.F.R. § 1003.15(b)–(c); *see also Perez-Sanchez*, 935 F.3d at 1155 ("And in contrast to their statutory counterpart, the regulations do not require that an NTA contain the time, date, and location of the removal hearing."). In fact, the regulations explicitly contemplate that "the Immigration Court shall be responsible for scheduling the initial removal hearing and providing notice to the government and the alien of the time, place, and date of hearing." 8 C.F.R. § 1003.18(b). Because the "expression of one thing implies the exclusion of others," Scalia & Garner, *supra*, at 107, we will not read § 1229(a)'s additional requirements into the regulation's text. It is thus irrelevant that the NTA

filed with the immigration court did not list the date and time of Hamilton's hearing, since such information is simply not required.[6]

Based on the plain text of the relevant statutes and regulations, we conclude that removal proceedings were validly initiated against Hamilton upon the filing of the NTA with the immigration court on February 12, 2015. On that date, which was within seven years of Hamilton's admission to the United States, § 1182(h)'s stop-time rule kicked in, rendering Hamilton ineligible for a waiver under that section. *Niz-Chavez* does not alter our interpretation of § 1182(h) as that decision does not present any relevant "change in law" that could justify equitable tolling. *See Outler v. United States*, 485 F.3d 1273, 1281 (11th Cir. 2007). We thus conclude that the BIA did not err in rejecting Hamilton's equitable-tolling argument or in concluding that his third motion to reopen was "untimely and number barred."

**B.**

---

[6] Furthermore, we have already held that filing an NTA that omits the date and time does not "deprive the agency of jurisdiction over [ ] removal proceedings" and "'does not prevent entry of a valid judgment.'" *Perez-Sanchez*, 935 F.3d at 1150, 1157 (quoting *Schlesinger v. Councilman*, 420 U.S. 738, 742 n.5 (1975))). If such an NTA is sufficient to end proceedings with a "valid judgment," it must also be enough to start them. *Cf.* 8 C.F.R. § 1003.14 (noting that "[j]urisdiction vests, *and proceedings before an Immigration Judge commence*, when a charging document is filed" (emphasis added)).

In the alternative, Hamilton pivots to arguing that remand is warranted because the BIA "failed to conduct a thorough analysis in its decision." This argument fares no better.

"To enable our review, the Board must give reasoned consideration to an applicant's claims and make adequate findings." *Ali*, 931 F.3d at 1333 (quotation omitted). The BIA fails to give reasoned consideration to a claim when it "misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record." *Bing Quan Lin*, 881 F.3d at 874 (quotation omitted). In conducting a reasoned consideration examination, we determine whether the BIA "has considered the issues raised and announced its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id*. (quotation omitted).

Here, we conclude that the BIA provided reasoned consideration of Hamilton's argument as to the meaning of "initiation of proceedings" in this context. The BIA denied Hamilton's motion after finding that "*Niz-Chavez* . . . d[id] not govern continuous lawful residence required for a section [1182(h)] waiver." And it explained it reached this conclusion because § 1182(h) contains materially different language from § 1229b(d)(1). This analysis is sufficient to address the crux of Hamilton's full argument—that the meaning of "initiation of proceedings" in § 1182(h) is a direct reference to the issuance of an NTA as described in § 1229(a)—and

thus provides reasoned consideration for this Court to properly review the substance of the issue. *See id.* at 874.

As to Hamilton's claim that the BIA did not provide reasoned consideration of his equitable-tolling argument, we conclude that this argument lacks merit. The BIA's conclusion that *Niz-Chavez* did not justify equitable tolling was necessarily based on its determination that *Niz-Chavez* does not apply to § 1182(h). The BIA also correctly found *Niz-Chavez* did not present new, binding caselaw that could serve as the basis for equitable tolling. And we can hardly say that the BIA's correct legal analysis lacked reasoned consideration. *See Perez-Guerrero v. U.S. Att'y Gen.*, 717 F.3d 1224, 1232–33 (11th Cir. 2013). We thus conclude that Hamilton cannot prevail on these grounds either.

## IV.    CONCLUSION

For the reasons stated, we deny Hamilton's petition for review of the BIA's order denying his motion to reopen.

**PETITION DENIED.**